John William ATWELL and James O. McCurley, Appellants,

v.

UNITED STATES of America, Appellee.

No. 25113.

United States Court of Appeals Fifth Circuit.

June 25, 1968.

As Corrected July 29, 1968.

---

Brooks Taylor, Crestview, Fla., William Guy Davis, Jr., Pensacola, Fla., for appellants.

C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., Stewart J. Carrough, Asst. U. S. Atty., Tallahassee, Fla., Clinton Ashmore, U. S. Atty., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and BOYLE, District Judge.

BOYLE, District Judge:

The appellants, jointly tried and found guilty by a jury of theft of Government property (wire for electricity transmission) of a value in excess of $100.00 (18 U.S.C. § 641), appeal their convictions, assigning as error the failure of the trial court

(1) To hold that the search of an automobile in which they were apprehended and the seizure therefrom of the property described in the indictment were illegal,

(2) To exclude an inculpatory oral statement made by the appellant, McCurley, which implicated Atwell, and

(3) To grant their motions for judgment of acquittal at the close of the Government's evidence.[1] We reverse.

On November 22, 1965, at about 4:30 P.M., Florida Game & Fresh Water Fish Commission enforcement officers established a check point on a road (not public, though apparently used to some extent by the public) on a Government reservation (Eglin Field). The officers, in uniform and wearing sidearms, were standing in the road, with their two cars parked on opposite sides of the road awaiting the approach of cars which they would check.

Primarily, they were checking possible Florida hunting law violations (it was open season for deer, except doe) and were authorized to check violations of the reservation's entrance permit requirement. In case of violations of the latter, they had orders to produce offenders at an Eglin Field Guard Station.

When Atwell's car, driven by him, with McCurley as his passenger, came to a point within 75 yards of the check point, it was observed to turn off at a fork and proceed away from the check point. The game agents undertook to follow and then chase, at speeds of about 75 miles per hour, until the car turned off a trail road, proceeded through the woods and was stopped by a tree.

One of the agents, as he proceeded along its side approaching Atwell, who had left the car, observed through the car window a quantity of wire in the rear seat area. Atwell was asked what was in the car. The reply was that "It's loaded." Loaded with deer thought the agent, who then proceeded to cut a rope holding down the lid of the car trunk, which contained wire, but no deer. Further inquiry disclosed that Atwell did not have a reservation entrance permit. The agents then took the appellants to the Guard Station.

About 11:00 P.M., while appellants were detained at the Jackson Guard Ranger Station on the reservation, an FBI Agent, accompanied by the Chief Investigator for the office of the Sheriff of Okaloosa County, Florida, interviewed McCurley.[2]

Appellants were tried by jury on June 16, 1967. With the jury present, the prosecutor proceeded to lay the founda-

---

1. The defense offered no evidence.

2. The record does not disclose whether any effort was made to interview Atwell.

tion for the introduction of McCurley's oral statement to the FBI Agent. When McCurley's counsel objected to the question which would have brought forth the content of the statement, the Trial Judge instructed the jury that McCurley's statement could only be considered as to him and could not be considered as to Atwell.[3]

Then when counsel pressed his objection, urging that the statement was not freely and voluntarily made, the jury was excluded and counsel permitted to cross-examine on that issue.[4] The objection was then overruled and with the jury present, the agent related what he had been told by McCurley.[5] And again the Trial Judge instructed the jury that the statement could not be considered adversely to the interest of the co-defendant, Atwell, and could only be considered for whatever the jury finds it to be worth, if anything, with respect to McCurley.[6]

In the jury's presence, the agent was again cross-examined on the circumstances of the interrogation of and advice given to McCurley.[7]

The evidence is clear that the FBI Agent informed McCurley that he did not have to make a statement, that he could remain silent, that anything he said could later be used against him in Court and that he had a right to consult with an attorney, or counsel with anyone else, at anytime. But the evidence shows that on direct examination the agent first stated he did not recall if he told McCurley that an attorney would be provided for him if he could not afford one. When pressed by the prosecutor, he stated he was sure he must have done so and when exhorted to think whether he did or did not, he asserted positively he did. On cross-examination, he maintained that he told McCurley he had a right to consult with an attorney, anyone of his choosing, at anytime, and if he couldn't afford one, one would be obtained for him.[8]

The propriety of the admission of the statement, as to McCurley himself, is challenged on the ground that McCurley was not properly advised of his constitutional rights. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

McCurley's interrogation occurred about seven months before Miranda was decided. There is no pretense that the agent could have known that his pre-interrogation advice to McCurley should have been as specific as required by Miranda. Indeed, he could not know.

3. Transcript pp. 127–130.

4. Transcript pp. 132–137.

5. "A  He told me that at approximately 11:30 the morning of November 22nd he was at home and another individual came to his home in the other fellow's car and asked him if he would go with him and help him with some transmission work on his automobile. Mr. McCurley is a mechanic. He got into the automobile and they proceeded to Eglin reservation in the proximity of Field 7, called the ranger's camp. And in that particular area, at a bombing range, they picked up copper wire, part of which was rolled lying beside the road, part of which was still laying in long strands which needed to be rolled and was then put into the automobile.

"Q  Did he further describe this area?
"A  He said that it was what appeared to him to be an old bombing range where there were abandoned vehicle trucks and tanks and the vegeta-

tion was pretty young and it appeared that it had just recently been replanted and had grown up again.
"Q  And he said it was in the vicinity of Field 7?
"A  Yes."

6. The trial judge repeated the instruction in his charge and gave the jury instructions regarding its obligation to determine the voluntariness of McCurley's statement and how, depending on its findings, it should be considered as to him. Transcript pp. 164–166.

7. Transcript pp. 141–147.

8. On re-direct, after having reference to his case report written five days after the interrogation from notes made then, the agent testified that "in the preamble to the interview I advised him that he had the right to consult with an attorney, anyone of his choosing at anytime, and that if he could not afford an attorney one would be obtained for him."

True, the evidence (undisputed because McCurley apparently chose not to testify for the limited purposes of the preliminary hearing) shows that McCurley was advised that he could consult with counsel *at anytime* and that if he could not afford an attorney, one would be obtained for him. But when one would be obtained for him or that he was entitled to have the benefit of advice of counsel before, and counsel present during, the interrogation was not explained to him.

"At anytime," in its usually accepted connotation in ordinary everyday affairs, can be said to embrace the full span of any course of events. But dealing with the Constitutional rights of an accused at the preliminary stage of the in-custody interrogation process is not commonplaced. "Anytime" could be interpreted by an accused, in an atmosphere of pressure from the glare of the law enforcer and his authority, to refer to an impending trial or some time or event other than the moment the advice was given and the interrogation following.

The *Miranda* guidelines must be given meaningful application. Tucker v. United States, 375 F.2d 363, 369 (8th Cir., 1967).

Although the interrogation was made and McCurley's statement taken prior to the *Miranda* decision, the trial took place subsequent to *Miranda* and the strict standards established by that case should have been applied by the trial court to the issue of admissibility at trial. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966) ; Evans v. United States, 375 F.2d 355 (8th Cir., 1967) ; Fendley v. United States, 384 F.2d 923, 924 (5th Cir., 1967).

■ The advice that the accused was entitled to consult with an attorney, re-tained or appointed, "at anytime" does not comply with *Miranda's* directive "* * * that an individual held for interrogation must be *clearly* informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation * * *. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (Emphasis added.) *Miranda,* supra, case reports 384 U.S. 471, 86 S.Ct. 1626, 16 L.Ed.2d 822. See also Windsor v. United States, 389 F.2d 530, 533 (5th Cir., 1968).

McCurley's statement, as to him, was improperly admitted and his conviction must be reversed.

Prior to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, decided on May 20, 1968 by the Supreme Court, admission of McCurley's statement, if otherwise competent, and as to him alone, would have been proper under appropriate instructions to the jury that it must be disregarded in determining the guilt or innocence of the co-defendant, Atwell. Now, in such circumstances, the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is held to be denied to the confessor's co-defendant at a joint trial.

■ In *Bruton,* the Supreme Court declared it was plain that the introduction of the confessor's statement implicating the co-defendant "* * * added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans [the confessing defendant] did not take the stand." McCurley did not take the stand and it cannot be gainsaid that his statement added critical weight to the Government's case against Atwell.[9]

---

**9.** As to the ownership and source of the wire, the other evidence adduced shows that it was of the same size and type used for overhead power lines at Eglin Air Force Base; fourteen spans of such wire had been cut near Field 7 Ranger Camp; there were no privately owned power lines on the reservation, the nearest being seven miles away; similar wire had been sold as surplus property to scrap dealers; the wire was of the size and type in common use in the electrical

Thus, even if McCurley's statement had been properly admitted as to him, the conviction of his co-defendant, Atwell, must be reversed. Bruton v. United States, supra.

Although we have fully considered the record, briefs and arguments of counsel on the remaining assignments of error, in view of our foregoing conclusions, we find it unnecessary to pass upon them at this time. It is noted, however, that the record, as made, indicates there may be serious question as to the validity of the search and seizure. On retrial both sides should develop fully in the record all facts and circumstances pertinent to that issue.

The judgment is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

industry; and there was nothing about the wire itself from which it could be identified as Government property. Base military and civilian personnel who testified could not say it was Government property.

Only McCurley's statement placed the appellants in the area of Field 7 Ranger Camp and established that they obtained the wire from that area of the reservation.