874 So.2d 1225 (2004)
Gorman ROBERTS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4490.
District Court of Appeal of Florida, Fourth District.
May 26, 2004.
Rehearing Denied July 2, 2004.
Ellis S. Rubin of the Law Offices of Ellis Rubin and Robert I. Barrar, Miami, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Gorman Roberts appeals his conviction for manslaughter in the tragic drowning *1226 death of five-year old Jordan Payne in a local canal. He contends that his postarrest videotaped statement should have been suppressed, because the Miranda[1] warning he received failed to inform him that he had a right to have an attorney present during questioning. As a result, he argues, he did not knowingly and intelligently waive his constitutional rights under Miranda. We agree and reverse.
When the police picked up Roberts and told him that he was being charged with Jordan's murder, he was taken to the police station for questioning. At the time Roberts was seventeen years old with an IQ of 67. After an unsuccessful attempt to reach Roberts's guardian by phone, the detective read Roberts his rights from the Broward Sheriff's Office (BSO) rights form. That form reads in pertinent part:

MIRANDA WARNING
BEFORE I ASK YOU ANY QUESTIONS, I WANT TO ADVISE YOU OF YOUR CONSTITUTIONAL RIGHTS.
1. You have the right to remain silent.
2. Anything you say can be used against you in a court of law.
3. You have the right to talk with a lawyer and have a lawyer present before any questioning.
4. If you cannot afford a lawyer, one will be appointed to represent you before any questioning if you wish.
Nowhere does the form advise Roberts of his right to have a lawyer present during questioning.
In the videotaped statement that followed, Roberts said that he, Jordan, and two other young boys were playing wrestling near the canal. Roberts acknowledged touching Jordan on the forehead when he tried to separate him and another boy while they were wrestling, but he denied pushing Jordan into the water. He said that as he was walking back up the canal edge, he heard something hit the water, then saw the little boy moving up and down in the water. Afraid to jump in the lake, he started crying and then fled the scene in a panic.
The defense moved unsuccessfully both before and during the trial to suppress this videotape, arguing, inter alia, that the Miranda warning given prior to the statement was constitutionally defective. Through the testimony of lay and expert witnesses, the state attempted to prove that the defendant, despite his youth and mild retardation, understood his Miranda right to have a lawyer with him during interrogation. However, none of the court-appointed psychologists could render a definitive opinion that the defendant understood this particular right. The only expert who actually interviewed the defendant concerning his understanding of this right testified that the defendant did not understand that he could have an attorney present during questioning. Dr. Shari Bourg-Carter testified that when she met with the defendant, she questioned him about his understanding of the right to counsel. She asked him "when the police have to give you an attorney and whether you have to get one when you are being questioned." His response was:
[N]o. Only in the courtroom. You can't have one when you're questioned because the cops wouldn't want one. Why not? Because you might not say what they want you to say.
Another psychologist, Dr. Ceros-Livingston, described the defendant's low IQ test results over the years, and, though unable to reach any conclusions concerning the defendant's understanding of his rights, *1227 found it plausible that he did not fully understand his right to have an attorney present during questioning by the police.
At the suppression hearing, the trial court took judicial notice of eighty-nine different Miranda rights forms used by other Florida law enforcement agencies. They all contained the warning that the accused is entitled to an attorney during questioning, or words to that effect. Although the court acknowledged that this element was missing in the BSO form, it denied the motion to suppress, finding that the defendant was competent and gave his statement freely and voluntarily without any police coercion.
After the jury returned a guilty verdict on the manslaughter charge, the defendant moved for judgment of acquittal notwithstanding the verdict. The court denied the motion, but noted troubling inconsistencies in the testimony of the two ten-year old state witnesses and commented that its decision was "a very close call."
The defendant contends that the Miranda warning recited by the police from the BSO rights form was defective in that it failed to advise him that he was entitled to have an attorney present during questioning as well as before questioning. For this reason, he argues, the motion to suppress his post-arrest videotaped statement was improperly denied.
We review de novo the adequacy of Miranda warnings, as a question of law. See C.A.M. v. State, 819 So.2d 802, 804 (Fla. 4th DCA 2001).
In Miranda, the Supreme Court said that the right to have counsel present during an interrogation is indispensable to the protection of the Fifth Amendment privilege against self-incrimination. The Court described the right-to-counsel warning which must be given:
[W]e hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.... As with the [other] warnings ... this warning is an absolute prerequisite to interrogation.
384 U.S. at 471-72, 86 S.Ct. 1602.
The Court, however, pointed out that Miranda warnings need not be given in the exact form described in Miranda. Id. at 490, 86 S.Ct. 1602; see also California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) ("Quite to the contrary, Miranda itself indicated that no talismanic incantation was required to satisfy its strictures."). In Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), the Court reiterated that reviewing courts "need not examine Miranda warnings as if construing a will or defining the terms of an easement." Rather, the inquiry is whether the warning uses equivalent and adequate language that fulfills the substantive requirements of Miranda. Id.
Florida courts have consistently interpreted Miranda as requiring notification that a person in custody has a right to have counsel present not only before interrogation but during interrogation as well. See Ramirez v. State, 739 So.2d 568 (Fla. 1999); Sapp v. State, 690 So.2d 581, 583-84 (Fla.1997); Holland v. State, 813 So.2d 1007, 1009 (Fla. 4th DCA 2002); T.S.D. v. State, 741 So.2d 1142 (Fla. 3d DCA 1999); Statewright v. State, 278 So.2d 652 (Fla. 4th DCA 1973); James v. State, 223 So.2d 52 (Fla. 4th DCA 1969).
Similarly, federal courts have recognized that advisement of the right to counsel during questioning is a vital part of the Miranda procedural safeguards. See United States v. Noti, 731 F.2d 610, 614 (9th Cir.1984); United States v. Anthon, 648 F.2d 669 (10th Cir.1981); Atwell v. *1228 United States, 398 F.2d 507 (5th Cir.1968); Groshart v. United States, 392 F.2d 172, 175 (9th Cir.1968); Windsor v. United States, 389 F.2d 530 (5th Cir.1968).
Federal courts, however, have reached different conclusions as to the adequacy of the Miranda warnings where, as here, a suspect was advised of the right to consult with counsel before questioning, but not advised of the right to have an attorney present during interrogation. Some courts have held that further express warnings of the right to an attorney during interrogation must be given. See United States v. Bland, 908 F.2d 471 (9th Cir.1990); United States v. Oliver, 505 F.2d 301 (7th Cir.1974); Chambers v. United States, 391 F.2d 455 (5th Cir.1969); United States v. Fox, 403 F.2d 97 (2d Cir.1968); United States v. Averell, 296 F.Supp. 1004 (E.D.N.Y.1969); Pemberton v. Peyton, 288 F.Supp. 920 (E.D.Va.1968); see also Brown v. Crosby, 249 F.Supp.2d 1285, 1302 (S.D.Fla.2003)(noting that advising the suspect of the right to have an attorney present before being asked any questions is not the same as advising him of the undeniable right to have an attorney present during questioning).
Other federal courts have found that additional warnings, expressly referring to the right to an attorney during interrogation, were unnecessary. See Evans v. Swenson, 455 F.2d 291 (8th Cir.1972); United States v. Vanterpool, 394 F.2d 697 (2d Cir.1968); Coyote v. United States, 380 F.2d 305 (10th Cir.1967). These courts have deemed the omission of the warning insignificant, reasoning that the right to counsel during interrogation can be inferred from warnings given as to the right to counsel before interrogation.
In cases where the suspect was informed generally of the right to an attorney, without being told when the attorney could assist, there is a split of authority among the federal courts as to whether this "timeless" warning is constitutionally sufficient. Our court is among those which have ruled that such an ambiguous statement is not constitutionally sufficient. See James v. State, 223 So.2d 52 (Fla. 4th DCA 1969); see also Atwell, 398 F.2d at 510; Groshart, 392 F.2d at 175; Chambers v. United States, 391 F.2d 455, 456 (5th Cir.1968); but see United States v. Frankson, 83 F.3d 79, 82 (4th Cir.1996); United States v. Caldwell, 954 F.2d 496, 502 (8th Cir.1992); United States v. Dizdar, 581 F.2d 1031 (2d Cir.1978); United States v. Adams, 484 F.2d 357, 361-62 (7th Cir. 1973); Evans v. Swenson, 455 F.2d at 295-96 (8th Cir.1972); United States v. Lamia, 429 F.2d 373, 376-77 (2d Cir.1970).
Here, the BSO warning does not fail to state altogether when an attorney can be present. Rather, it explicitly states that an attorney can be present before questioning. This use of the "before questioning" warning alone, however, has suggested to at least one court that the suspect was affirmatively misled into believing that the attorney could not be present during questioning itself. See Caldwell, 954 F.2d at 504 (distinguishing United States v. Fox, 403 F.2d 97 (2d Cir.1968)). Perhaps for this reason, courts confronting warnings with just the "before questioning" advice have deemed them constitutionally infirm. See United States v. Bland, 908 F.2d 471 (9th Cir.1990); Noti, 731 F.2d at 615; Fox, 403 F.2d at 100 (2d Cir.1968); Windsor, 389 F.2d at 533 (5th Cir.1968); see also Brown v. Crosby, 249 F. Supp 2d at 1302.
We agree with the defendant that the Miranda warnings given to him were inadequate in failing to inform him that he had a right to have counsel present during interrogation. This inadequacy militated against a finding that the defendant knowingly and intelligently waived his Miranda *1229 rights. See Brown, 249 F.Supp.2d at 1291 (discussing that a waiver of Miranda rights is "knowingly and intelligently" made only if the defendant has a full awareness of the nature of the right being abandoned and the consequences of his decision to abandon it).
We reject the state's argument that there was sufficient evidence upon which the trial court could rely in finding that the defendant understood his Miranda right to have an attorney present during questioning. The state contends that testimony of the state's psychologists that the defendant was "barely" mentally retarded and familiar with the juvenile justice system, as well as testimony of the defendant's high school coach and assistant principal that the defendant was "street smart" and appeared to be normal, supported the trial court's finding that the defendant understood his right to a lawyer. However, as the Supreme Court said in stressing the importance of Miranda warnings:
No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.
Miranda, 384 U.S. at 471-72, 86 S.Ct. 1602.
The state suggests that another indicator of the defendant's understanding of his right to have a lawyer present during questioning is the separate "waiver of rights" section of the Miranda form he signed. This form states:
I, Gorman Roberts, have read this statement of my rights or have had it read to me and I understand what my rights are. With these rights in mind I am willing to answer questions without a lawyer present. This waiver of rights is signed of my own free will without any threats or promises having been made to me.
In the state's view, this acknowledgment was sufficient to clarify any possible confusion as to whether or not an attorney could be present during questioning. We disagree, however, that the signed form, in conjunction with the warnings given, sufficiently conveyed the substance of the Miranda requirements or served to corroborate the defendant's knowing and intelligent waiver of his rights. The right to appointed counsel during questioning cannot readily be inferred from the waiver form. This form is not the "effective and express explanation" of the right to counsel required by Miranda. Miranda requires a clear, understandable warning from law enforcement officers that conveys all of a defendant's rights. "Only through such a warning is there ascertainable assurance that the accused was aware of this right." Miranda, 384 U.S. at 471-72, 86 S.Ct. 1602.
Because the Miranda warnings the defendant received while in custody were inadequate to fully inform him of his constitutional rights, we conclude that the trial court erred in admitting the defendant's videotaped statement into evidence. Further, we are unable to conclude that this error was harmless beyond a reasonable doubt, given that the bulk of the evidence against defendant was provided by two young witnesses whose credibility was sharply contested at trial.[2] Accordingly, we reverse defendant's conviction and sentence *1230 and remand this cause for a new trial. We affirm as to all other issues raised by the defendant.
REVERSED in part, AFFIRMED in part and REMANDED.
STONE and KLEIN, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] One of the issues raised by the defendant in this appeal is the trial court's denial of his motion to strike the testimony of one the state's main witnesses after the court acknowledged that the witness was "unworthy of belief" and did not appear "to know the difference between truth or fiction."