United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 2, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-70020

_____

ALLEN BRIDGERS,

Petitioner-Appellant,

v.

DOUG DRETKE, Director,
Texas Department of Criminal Justice,

Respondent-Appellee.

_____

Appeal from the United States District Court for the Eastern
District of Texas

_____

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Petitioner Allen Bridgers, convicted of capital murder in Texas and sentenced to death, appeals the denial of federal habeas relief. Bridgers contends that the warnings he received prior to his custodial interrogation were inadequate to apprise him of his constitutional rights, and thus, the resulting confession was admitted at trial in violation of the Fifth Amendment. The district court granted a Certificate of Appealability ("COA") with

respect to this claim. *See* 28 U.S.C. § 2253(c). Additionally, Bridgers requests a COA with respect to his Fourth Amendment claim. We decide that Bridgers has not shown that the state court's decision that he was adequately advised of his Fifth Amendment rights is objectively unreasonable and affirm the district court's denial of federal habeas relief. Finding his Fourth Amendment claim barred, we deny the request for a COA.

## I. BACKGROUND

On May 25, 1997, the body of Mary Amie was discovered by her niece at her home in Tyler, Texas.[1] That same day Bridgers flew from the Dallas-Fort Worth airport to Fort Lauderdale, Florida. Three days later on May 28, Detective Charles Morrow of the Fort Lauderdale Police Department received information from Crime Stoppers regarding a possible suspect wanted in Texas for murder. Detective Morrow had no prior knowledge of the Texas murder and did not contact Texas authorities. Rather, he accompanied the individual who had provided the information to Crime Stoppers to the Holiday Park area of Fort Lauderdale. The confidential informant pointed out Bridgers as the person who admitted that he had murdered a woman in Texas.

Detective Morrow waited for additional detectives to arrive

---

[1] The facts are taken largely verbatim from the Texas Court of Criminal Appeals' opinion on Bridgers's direct appeal. *Bridgers v. State of Texas,* No. 73,112 at 2-4 (Tex. Crim. App. October 25, 2000) (unpublished).

2

and then approached Bridgers, who was lying in the grass. Detective Morrow testified that there were seven plainclothes officers in the vicinity but could not remember how many approached Bridgers. Morrow testified that his badge, gun, and handcuffs were displayed and that it was obvious he was a police officer. Upon approaching Bridgers, Detective Morrow stated that he was conducting an investigation and asked Bridgers to accompany him to the police station. At the suppression hearing, Detective Morrow testified that Bridgers was "nervous, but cooperative" and agreed to go to the police station for questioning, saying "Okay. That's fine. Let's go." He also testified that if Bridgers had refused to accompany him to the station, he would have detained Bridgers and questioned Bridgers in the park. Bridgers was handcuffed and transported to the station in an unmarked car.

Upon arrival at the Fort Lauderdale police station, Detective Morrow obtained Bridgers's driver's license which identified him as Allen Bridgers. Next, Detective Morrow took him to the interview room to meet with Detectives Jack King and Jack Gee. Detective Gee had obtained a fax of a warrant for Bridgers's arrest dated May 27 from the Smith County Sheriff's Department. According to Detective Morrow's testimony, it was at this point that Bridgers was under arrest.

When the detectives entered the room, they introduced themselves to Bridgers, and Detective King warned Bridgers from a card issued by the Fort Lauderdale Police Department. The card

read as follows:

> You have the right to remain silent. Do you understand?
> Anything you say can and will be used against you in a
> court of law. Do you understand?
> You have the right to the presence of an attorney/lawyer
> prior to any questioning. Do you understand?
> If you cannot afford an attorney/lawyer, one will be
> appointed for you before any questioning if you so
> desire. Do you understand?

Bridgers responded affirmatively to each question posed to him. He indicated that he was not sure whether he wanted an attorney. He did ask and was permitted to speak to his mother. After he received the warnings, Bridgers was asked if he knew why he was there and responded that Texas thought he had killed someone. Detective King asked, "Did you?" and Bridgers said, "Yes, you've got the right guy."

After Bridgers finished talking with his mother, the detectives activated the tape recorder and administered the warnings a second time. Then Bridgers gave the audio taped confession at issue in which he admitted murdering Mary Amie and taking her purse, jewelry, and car. He requested two short stops and both requests were honored. Both Detectives King and Gee testified that Bridgers did not appear to be under the influence of any substances and his mental capacity did not seem diminished in any way. They also denied threatening Bridgers or promising him anything in return for his statement.

Prior to trial, Bridgers filed a motion to suppress his confession. The state trial court held a hearing on the motion and

4

denied it.  Ultimately, Bridgers's audio taped confession was admitted at trial over objection.  The jury convicted Bridgers of capital murder, and he was sentenced to death.  On his automatic direct appeal, the Texas Court of Criminal Appeals affirmed his conviction and sentence.  *Bridgers v. State of Texas,* No. 73,112 (Tex. Crim. App. October 25, 2000) (unpublished).

Bridgers also filed an application for writ of habeas corpus in state court, and the Court of Criminal Appeals denied relief. *Ex Parte Bridgers,* No. 45,179-01 (Tex. Crim. App. May 31, 2000). Bridgers now appeals the district court's denial of federal habeas relief.

## II.  ANALYSIS

### A.  *Fifth Amendment*

#### 1. Standard of Review

Bridgers filed his section 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The petition, therefore, is subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 2068 (1997).  Pursuant to the federal habeas statute, as amended by AEDPA, 28 U.S.C. § 2254(d), we defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as

5

determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404-08, 120 S.Ct. 1495, 1519-20 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable. *Id*. at 409, 120 S.Ct. at 1521. Additionally, pursuant to section 2254(e)(1), state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

## 2. Inadequate Warnings

Bridgers argues that the warnings given to him by Florida law enforcement officers prior to custodial interrogation were insufficient to protect his Fifth Amendment rights, rendering his murder confession inadmissible. More specifically, Bridgers contends that the warnings he received were inadequate under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), because

6

although the above-quoted warnings explained that he had a right to the presence of counsel "prior to" questioning, they did not explicitly state that he had a right to consult an attorney *during* questioning. On direct appeal, the Texas Court of Criminal Appeals rejected this argument, opining that:

> Certainly, the right to the presence of an attorney during questioning is a crucial vehicle for safeguarding the privilege against self-incrimination. *See Miranda,* 384 U.S. at 470. However, we do not think that the above warning is susceptible to the interpretation [Bridgers] advances. The detectives did not tell [Bridgers] that he had the right to consult or speak to an attorney before questioning, which might have created the impression that the attorney could not be present during interrogation. They told him that he had the right to the *presence* of an attorney before any questioning commenced. We think that this conveyed to [Bridgers] that he was entitled to the presence of an attorney before questioning and that this attorney could remain during questioning.

*Bridgers v. State of Texas,* No. 73,112 at 8 (Tex. Crim. App. October 25, 2000) (unpublished) (emphasis in original). Accordingly, the question is whether the Court of Criminal Appeals's conclusion—that the warnings adequately advised Bridgers of the right to have his attorney present during the interrogation—was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

In *Miranda,* the Supreme Court held, among other things, that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and *to have the lawyer*

7

*with him during interrogation.*"  384 U.S. at 471, 86 S.Ct. at 1626 (emphasis added).  However, the Supreme Court "has never indicated that the 'ridigity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant."  *California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 2809 (1981).  Indeed, the High Court has explained that we "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement.  The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*'" *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 2880 (1989) (brackets in original) (quoting *Prysock,* 453 U.S. at 361, 101 S.Ct. at 2810).

In this case, the Court of Criminal Appeals applied controlling Supreme Court precedent and properly recognized that *Miranda* required advising a suspect that he is entitled to have counsel present during interrogation.  Therefore, the Court of Criminal Appeals did not reach a decision that was contrary to Supreme Court precedent.  We must now determine whether the Court of Criminal Appeals's conclusion was an unreasonable application of Supreme Court precedent.  As previously set forth, a state court's decision constitutes an unreasonable application of clearly established law if it is objectively unreasonable.[2]

---

[2]  On Bridgers's direct criminal appeal, the Supreme Court denied certiorari.  Justice Breyer, joined by Justices Stevens and Souter, issued a statement indicating that because the warnings

8

As set forth above, the Supreme Court "h[e]ld that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and *to have the lawyer with him during interrogation*." *Miranda,* 384 U.S. at 471, 86 S.Ct. at 1626 (emphasis added). The Supreme Court, however, also directed that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a *right to the presence of an attorney*, either retained or appointed." *Id.* at 444, 86 S.Ct. at 1612 (emphasis added). The latter warnings do not explicitly state that a suspect has a right to counsel during questioning, indicating that the warnings provided to Bridgers are adequate.[3]

Perhaps more importantly, the Supreme Court expressly found that the warnings employed by the Federal Bureau of Investigation

_____

"say nothing about the lawyer's presence during interrogation . . . they apparently leave out an essential *Miranda* element." *Bridgers v. Texas,* 532 U.S. 1034, 121 S.Ct. 1995, 1996 (2001) (citation omitted). Obviously, this statement by the three Justices does not demonstrate that the Supreme Court would hold that Bridgers's warning was insufficient. Moreover, we agree with the Director that because the statement was made with respect to Bridgers's direct criminal appeal, it does not address whether those three Justices believed that the state court decision was an objectively unreasonable application of Supreme Court precedent under AEDPA.

[3] In pertinent part, the warnings given to Bridgers provided that: "You have the right to the presence of an attorney/lawyer prior to any questioning. Do you understand?"

(FBI) at the time of its decision were "consistent with the procedure which we delineate today." *Miranda,* 384 U.S. at 483-84, 86 S.Ct. at 1632-33. Although the pre-*Miranda* FBI warnings provided that the suspect had a right to counsel, they did not explicitly state that counsel may be present during interrogation.[4] Indeed, Justice Clark's dissent noted that "the FBI does not warn that counsel may be present during custodial interrogation." 384 U.S. at 500 n.3, 86 S.Ct. at 1641 n.3 (Clark, J., dissenting). Justice Clark believed the FBI's warnings were not as stringent as the warnings imposed by the majority opinion. *Id.*

In any event, what is clear from the majority opinion is that a suspect has the right to counsel during custodial interrogation and must be so informed. What is not clear from the majority opinion is whether informing the suspect that he has a right to the presence of an attorney prior to questioning adequately conveys that counsel may remain during questioning.

Indeed, there is a split among the circuits with respect to whether the warning must explicitly provide that a suspect is entitled to the presence of counsel during interrogation. On one hand, this Court, like the Sixth, Ninth, and Tenth Circuits, has

---

[4] "The standard warning long given by Special Agents of the FBI to both suspects and persons under arrest is that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court." *Miranda*, 384 U.S. at 484, 86 S.Ct. at 1633 (internal quotations marks omitted). Additionally, a suspect was advised of "his right to free counsel if he [was] unable to pay . . . ." *Id.*

10

interpreted *Miranda* to require a more explicit warning indicating that a suspect is entitled to counsel during questioning. *See e.g., Atwell v. United States,* 398 F.2d 507, 510 (5th Cir. 1968); *United States v. Tillman,* 963 F.2d 137, 140-42 (6th Cir. 1992); *United States v. Noti,* 731 F.2d 610, 615 (9th Cir. 1984); *United States v. Anthon,* 648 F.2d 669, 672-74 (10th Cir. 1981).

On the other hand, the Second, Fourth, Seventh, and Eighth Circuits under various circumstances have held that warnings are adequate without explicitly stating that the right to counsel includes having counsel present during the interrogation. *See United States v. Vanterpool*, 394 F.2d 697, 698-99 (2d Cir. 1968); *United States v. Frankson,* 83 F.3d 79, 81-82 (4th Cir. 1996); *cf. United States v. Adams,* 484 F.2d 357, 361-62 (7th Cir. 1973) (finding warning adequate but stating that warnings provided to suspects on the street are not expected to be as precise as those given at the police station); *United States v. Caldwell,* 954 F.2d 496, 500-04 (8th Cir. 1992) (finding no plain error when warning omitted right to counsel during interrogation).

As previously set forth, the Supreme Court has instructed reviewing courts to determine whether the warnings reasonably convey to the suspect his rights as set forth in *Miranda.* That is the analysis the Court of Criminal Appeals conducted in the instant

11

case.[5]  In light of the Court of Criminal Appeals's apparent adherence to the proper inquiry, the Supreme Court's endorsement of the FBI warnings that did not expressly state there is a right to counsel during interrogation, and the circuit split regarding whether *Miranda* requires explicitly informing the suspect that he has the right to counsel during interrogation, we hold that the Court of Criminal Appeals's conclusion that the warnings adequately conveyed the right to counsel during interrogation was not objectively unreasonable.[6]  Therefore, we affirm the district court's denial of relief with respect to Bridgers's Fifth Amendment claim.

B.    *Fourth Amendment*

1.    COA Standard of Review

---

[5]  The Court of Criminal Appeals noted that Bridgers had not only been informed that he had the right to consult with an attorney before questioning but also that he "had the right to the *presence* of an attorney before any questioning began." *Bridgers,* No. 73,112 at 8 (emphasis in original).  The Court concluded that this "conveyed to [Bridgers] that he was entitled to the presence of an attorney before questioning and that this attorney could remain during questioning." *Id.*  We note that the warnings further advised Bridgers he was entitled to have counsel appointed prior to questioning if he could not afford one.

[6]  We recognize that this Circuit has held that a suspect must be explicitly warned that he has the right to counsel during interrogation.  *Atwell,* 398 F.2d at 510.  That case was a direct criminal appeal reviewed *de novo.*  Here, in contrast, pursuant to AEDPA, we have determined that the Texas Court of Criminal Appeals's decision was not an objectively unreasonable application of Supreme Court precedent.  Accordingly, *Atwell* remains binding precedent for cases on direct appeal in this Circuit.

The district court denied a COA with respect to Bridgers's Fourth Amendment claim. Under AEDPA, a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the district court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. *Miller-El*, 537 U.S. at 336, 123 S.Ct. at 1039. A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

Where the district court has denied claims on procedural grounds, a COA should issue only if it is demonstrated that

13

"jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342, 123 S.Ct. at 1042. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338, 123 S.Ct. at 1040. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

### 2.    Unlawful Arrest

Bridgers contends that Florida law enforcement officers arrested him unlawfully in violation of the Fourth Amendment, rendering his subsequent confession to murder inadmissible.  The Director responds that the district court correctly found that Bridgers had had an opportunity for full and fair litigation of this claim in the Texas state courts and, as a result, Bridgers is precluded from any federal habeas corpus relief pursuant to *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037 (1976).

14

When a petitioner raises a Fourth Amendment claim during a federal habeas corpus proceeding, "our initial inquiry is whether the state provided an opportunity for a full and fair hearing" with respect to the claim. *Swicegood v. Alabama,* 577 F.2d 1322, 1324 (5th Cir. 1978). It is undisputed that Bridgers raised this issue in a pretrial suppression motion, and the Texas state trial court held a hearing during which six witnesses testified, including Florida law enforcement officers involved in the initial encounter with Bridgers. The trial court denied the motion to suppress, and Bridgers renewed the objection at trial. On his automatic direct appeal Bridgers raised this claim, and the Texas Court of Criminal Appeals overruled it, finding that he "was not seized within the meaning of the Fourth Amendment." *Bridgers,* No. 73,112 at 7.

Nevertheless, Bridgers argues that he was denied a full and fair opportunity to litigate because the trial court wrongly concluded that Bridgers was not seized in violation of the Fourth Amendment. We have rejected such an argument, explaining that "[i]f the term 'fair hearing' means that the state courts must correctly apply federal constitutional law, *Stone* becomes a nullity." *Swicegood,* 577 F.2d at 1324.

We agree with the district court's conclusion that Bridgers was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court and conclude that reasonable jurists would not find it debatable whether the district court was correct

in finding that *Stone* bars any federal habeas review of the instant claim. *See Hughes v. Dretke,* 412 F.3d 582, 596 (5th Cir. 2005) (declining to issue a COA because the petitioner had been afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court). Thus, we decline to issue a COA.

## III. CONCLUSION

The judgment of the district court is AFFIRMED. The request for a COA is DENIED.

16