980 So.2d 610 (2008)
Derek ANTHONY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1587.
District Court of Appeal of Florida, Fourth District.
May 7, 2008.
Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
In this appeal from an order denying post conviction relief, we affirm the trial court's ruling that appellant's trial counsel *611 did not fail to function as counsel guaranteed by the Sixth Amendment, even though she did not move to suppress appellant's statements on the grounds later identified in Roberts v. State, 874 So.2d 1225 (Fla. 4th DCA 2004).
Derek Anthony was convicted of two counts of sexual battery and one count of lewd and lascivious conduct in 2002. The convictions and sentences were affirmed on direct appeal. See Anthony v. State, 868 So.2d 531 (Fla. 4th DCA 2004).
In 2005, Anthony moved for post conviction relief. One ground claimed ineffective assistance of his trial counsel for failing to move to suppress his statements to the police in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contended that the Miranda warnings were deficient in failing to advise Anthony that he had a right to an attorney during questioning. He "argued that his own statements were the focal point of the trial, and that the error in admitting them was not harmless beyond a reasonable doubt because the bulk of the evidence against him was his own confession and its corroborating effect." Anthony v. State, 927 So.2d 1084, 1085 (Fla. 4th DCA 2006). This argument was based on our opinion in Roberts v. State, which was decided after Anthony was convicted. The circuit court denied the motion. We reversed and remanded the case for the attachment of portions of the record conclusively refuting his claim or for an evidentiary hearing.
The circuit court held an evidentiary hearing. Anthony's trial counsel, Dorothy Ferraro, testified that she had worked for the public defender's office for almost twenty years; she supervised two felony divisions, handled the major crimes cases in those divisions, and trained lawyers in the office. The trial in this case consisted of the six year old victim's statement, Anthony's statement, and testimony from the sexual assault treatment center person who examined the victim. Ferraro argued for the suppression of Anthony's statements because they were not voluntary. She did not raise the Roberts issue as the opinion had not been released, nor had she ever seen or been aware of any other lawyer raising this issue.
Experienced criminal defense attorney Raag Singhal also testified. For the Broward Association of Criminal Defense Lawyers, he updated other attorneys about new developments in the law. He testified that until the Roberts decision, defense attorneys had not raised the Miranda issue decided in Roberts. Singhal told the court, "At the time [Ellis] Rubin[1] filed his motion in Roberts, I looked at his motion, and thought it was a good motion, but I didn't even think he was going to win it." Singhal emphasized that, at the time it was made, the Miranda issue raised in Roberts was novel.
Singhal said the Roberts decision was a surprise because while "we were proud of Ellis Rubin for coming up with the argument, but weas a group, we didn't read Miranda the way the 4th appeared to read it in the Roberts opinion." The general consensus was that nothing "in the Miranda v. Arizona case, . . . would lead a lawyer to conclude that the Roberts case would have been decided the way it was." He believed that this issue would not survive in federal court. For support, he pointed to Bridgers v. Dretke, 431 F.3d 853 (5th Cir.2005), which involved Miranda warnings almost identical to those of Roberts. Evaluating the ruling of a Texas court finding warnings similar to those in Roberts to be adequate, the fifth circuit held that such a ruling "was not objectively *612 unreasonable." 431 F.3d at 860. Singhal said Bridgers was important "because it shows that, in this case, the Anthony case, Ms. Ferrarro would not have been expected to file such a motion."
After the evidentiary hearing, the trial judge denied the motion for post conviction relief. The judge noted that the Roberts issue "regarding the warnings had never been litigated before this Court in its twelve . . . years on the bench."
The landmark case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that a defendant alleging ineffective assistance of trial counsel must demonstrate that counsel performed deficiently and that such deficiency was prejudicial. Id. at 687, 104 S.Ct. 2052. In this case we focus on the first prong of Stricklandwhether trial counsel's performance was constitutionally deficient.
Under Strickland, a deficient performance means that counsel made errors "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. Evaluation of counsel's trial performance should not be distorted "by the effects of hindsight." Id. at 689, 104 S.Ct. 2052. Rather, counsel's performance should be evaluated "from counsel's perspective at the time," using an "objective standard of reasonableness" under "prevailing professional norms." Id. at 688-89, 104 S.Ct. 2052. The Supreme Court refrained from delineating specific standards for ineffective assistance of counsel:
More specific guidelines are not appropriate. The Sixth Amendment refers simply to "counsel," not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions.
Id. at 688, 104 S.Ct. 2052.
Trial counsel did not violate prevailing professional norms by failing to raise the Roberts issue in Anthony's case. This case was tried before Roberts was decided. Since 1966, when the Supreme Court issued the case, "Miranda has become embedded in routine police practice to the point where the warnings have become part of our national culture." Dickerson v. United States, 530 U.S. 428, 430, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Although California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), held that Miranda warnings need not be a "talismanic incantation" so long as the rights are adequately conveyed, the litany of Miranda rights was so well known by 2000 that police departments did not routinely fiddle with their content. For example, at the suppression hearing in Franklin v. State, 876 So.2d 607, 608 (Fla. 4th DCA 2004),
the defense offered ninety rights forms obtained from federal and state law enforcement agencies. Eighty-nine of the ninety forms properly indicated that the suspect could consult with a lawyer during questioning. Only the form utilized in [Franklin] omitted that portion of the Miranda warning.
Over time, Miranda litigation moved away from analyzing the content of Miranda warnings to focus on other issues. Thus, by 2002, it would not have been the prevailing professional norm for an attorney to focus on the content of Miranda warnings, just as a physician in Bangor, Maine would not routinely examine a patient for a rare tropical disease.
A second reason for finding that Anthony's trial lawyer did not deviate from prevailing professional norms is that the Miranda deficiency identified in Roberts is *613 not obvious; whether the Roberts situation is a constitutional violation at all is the subject of disagreement among appellate courts. The federal fifth circuit found no violation in Bridgets. The second district evenly divided on the Roberts issue in M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA 2007), rev. granted, 962 So.2d 337 (Fla.2007). See Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007) (finding Miranda violation); Graham v. State, 974 So.2d 440 (Fla. 2d DCA 2007) (distinguishing Powell and finding no Miranda violation). In a case similar to Roberts, this court divided seven to five. See Canete v. State, 921 So.2d 687 (Fla. 4th DCA 2006). Where judges so disagree about an issue, trial counsel here did not deviate from professional norms for not being the first attorney to raise it.
If there is legal malpractice surrounding the Roberts warnings, it was committed by the anonymous attorney, if one was involved, who approved the modification of the Miranda warnings that led to Roberts and its progeny. From a law enforcement perspective, tinkering with the warnings was unnecessary, since "[t]here is no good evidence that Miranda has substantially depressed confession rates or imposed significant costs on the American criminal justice system." West v. State, 876 So.2d 614, 616 (Fla. 4th DCA 2004) (Gross, J., concurring) (quoting George C. Thomas III & Richard A. Leo, The Effects of Miranda v. Arizona: "Embedded" in Our National Culture? 29 Crime & Just. 203 (2002)).
For these reasons, we affirm the order of the trial court denying post conviction relief.
POLEN and MAY, JJ., concur.
NOTES
[1] The attorney who argued Roberts.