957 So.2d 1219 (2007)
M.A.B., Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-1367.
District Court of Appeal of Florida, Second District.
April 27, 2007.
Rehearing Denied June 21, 2007.
James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellee.

EN BANC
PER CURIAM.
M.A.B. challenges his adjudications of delinquency for grand theft of a motor vehicle and burglary of a conveyance. M.A.B. argues that his postarrest statements should have been suppressed because the Miranda[1] warnings he received failed to inform him of his right to have an attorney present during questioning. M.A.B. also argues that he did not knowingly and voluntarily waive his Miranda rights.
Prior to the issuance of a panel decision, the court on its own motion, pursuant to *1220 Florida Rule of Appellate Procedure 9.331(a) and (c), by majority vote ordered en banc consideration with respect to this case on the ground that the case is of exceptional importance. Upon en banc consideration, the court is evenly divided concerning the disposition of the appeal, Judges Altenbernd, Whatley, Stringer, Davis, Kelly, Canady, and Villanti voting to affirm and Judges Fulmer, Northcutt, Casanueva, Salcines, Silberman, Wallace, and LaRose voting to reverse. Pursuant to rule 9.331(a), the adjudications are affirmed.
We certify pursuant to article V, section 3(b)(4) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) that the following question upon which this decision passes is one of great public importance[2]:
DOES THE FAILURE TO PROVIDE EXPRESS ADVICE OF THE RIGHT TO THE PRESENCE OF COUNSEL DURING QUESTIONING VITIATE MIRANDA WARNINGS WHICH ADVISE OF BOTH (A) THE RIGHT TO TALK TO A LAWYER "BEFORE QUESTIONING" AND (B) THE "RIGHT TO USE" THE RIGHT TO CONSULT A LAWYER "AT ANY TIME" DURING QUESTIONING?
FULMER, C.J, and ALTENBERND, WHATLEY, NORTHCUTT, CASANUEVA, SALCINES, STRINGER, DAVIS, SILBERMAN, CANADY, KELLY, VILLANTI, WALLACE, and LaROSE, JJ., Concur.
CANADY, J., Concurs with opinion, in which ALTENBERND, WHATLEY, STRINGER, DAVIS, KELLY, and VILLANTI, JJ., Concur.
WALLACE, J., Dissents with opinion, in which FULMER, C.J., and LaROSE, J., Concur, and in which NORTHCUTT, J., Concurs in part.
LaROSE, J., Dissents with opinion, in which FULMER, C.J., NORTHCUTT, SALCINES, and SILBERMAN, JJ., Concur.
NORTHCUTT, J., Dissents with opinion.
CASANUEVA, J., Dissents with opinion, in which NORTHCUTT, SALCINES, and SILBERMAN, JJ., Concur.
CANADY, Judge, Concurring.

I. Background

At the time of his arrest, M.A.B. was transported to the Tampa Police Department in handcuffs and placed in a holding room. Approximately thirty to forty minutes later, a police detective came into the holding room to question M.A.B. At that time, M.A.B. was read his Miranda rights. At a hearing on M.A.B.'s motion to suppress, the detective who read the Miranda rights and participated in questioning M.A.B. testified that he read the warnings from a standard form. According to the detective's testimony, M.A.B. was advised:
You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering . . . any of our questions. If you cannot afford to hire a lawyer, one will [be] appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.

(Emphasis added.) The detective testified that M.A.B. stated he understood his rights. M.A.B. also signed a waiver of rights form which sets forth the Miranda *1221 warnings in the same manner as the oral warnings described in the detective's testimony. The written waiver form contains an express acknowledgment by M.A.B. that he understood his rights as well as a statement that he was "willing to talk" to the police. The interrogation, which was not recorded and lasted about ten minutes, resulted in M.A.B.'s admitting that he committed the crimes for which he was subsequently adjudicated.
The detective testified that he did not remember asking M.A.B.'s age, though he believed he was probably fifteen or sixteen. (It is undisputed that on the day of his confession, M.A.B. was within a few days of being 15 1/2 years of age.) The detective also testified that he did not know M.A.B.'s experience, background, school grade level, or intelligence or if M.A.B. had prior contact with law enforcement. The detective did testify, however, that M.A.B. appeared mature for his age. He further testified that he made no promises to M.A.B.
According to the testimony of another officer who participated in interrogating M.A.B. after the Miranda rights had been read to him, M.A.B. never expressed any desire for a parent or guardian to be present and the officer did not remember attempting to contact M.A.B.'s parents. The officer testified that although the department's standard operating procedure was to contact a parent before questioning or to have a parent present at questioning, the procedure was merely preferred and not required. The officer testified that at some point M.A.B. did contact his mother, but the officer could not remember whether this occurred prior to or after the interrogation.
The officer also testified that no threats or promises were made during his interrogation of M.A.B. and that M.A.B. did not appear to be under the influence of drugs or alcohol. The officer further testified that M.A.B. appeared to understand the questions posed to him during the interrogation.
There is no suggestion in the record that M.A.B. was subjected to any cajolery or trickery.
In his motion to suppress, M.A.B. contended that "he was not properly advised of his right to consult with an attorney during questioning or of his right to stop the questioning at any time." He also asserted that "the State cannot prove by a preponderance of the evidence that the statements [he] made to law enforcement . . . were knowingly, voluntarily[,] and intelligently made." At the hearing on the motion to suppress, the defense focused on factors relevant to the validity of M.A.B.'s waiver of Miranda rights.[3]
The trial court first determined that the Miranda warnings were adequate to inform M.A.B. of his rights. Regarding the validity of M.A.B.'s waiver of his Miranda rights, the trial court's oral ruling included findings (1) that "[t]he defendant appeared mature for his age," (2) that the defendant "did not appear to be under the influence of any alcohol or drugs," and (3) that the defendant "appeared to understand questions that were being asked to him in the interview."
The trial court also noted that there was no evidence concerning M.A.B.'s intelligence and educational background or whether M.A.B. had prior experience with law enforcement.[4] The findings of the trial *1222 court also included this statement: "[T]he court would note that the manner in which the Miranda rights were administered to [M.A.B.] were sufficient and did involve any [sic] cajoling or trickery." (Emphasis added.) It is apparent from the whole context that the trial court intended to find that the administration of Miranda rights "did [not] involve any cajoling or trickery." The trial court determinedbased on the totality of the circumstancesthat M.A.B. voluntarily, knowingly, and intelligently waived his Miranda rights.
Ultimately, M.A.B. was adjudicated delinquent on both charges. This appeal followed.

II. Analysis

First, I will address M.A.B.'s argument on appeal that the Miranda warnings given by the police were defective because they did not contain express advice concerning the right to the presence of counsel during questioning. Second, I will turn to the argument that M.A.B.'s waiver was invalid because the State failed to establish that it was knowing and voluntary. In reviewing both issues, "a presumption of correctness [is accorded] to the trial court's rulings" concerning the "determination of historical facts"; however, "the determination of whether the application of the law to the historical facts establishes an adequate basis for the trial court's ruling is subject to de novo review." Connor v. State, 803 So.2d 598, 608 (Fla.2001).

A. The Adequacy of the Miranda Warnings

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that prior to custodial interrogation, law enforcement officers must inform a suspect of certain rights in order to protect the suspect's Fifth Amendment privilege against self-incrimination from the pressures associated with in-custody interrogations.
[The suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
Id. at 479, 86 S.Ct. 1602. The Supreme Court described the right to have counsel present during interrogation as "indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." Id. at 469, 86 S.Ct. 1602.

1. The General Scope of Miranda's Requirements: No Talismanic Incantation

The Supreme Court in Miranda specifically recognized, however, that the requirement to inform a suspect of his rights could be satisfied not only by the precise warnings delineated but also by "a fully effective equivalent": "The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." Id. at 476, 86 S.Ct. 1602 (emphasis added).
In California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Court, pointing to the reference in *1223 Miranda to "a fully effective equivalent," stated that "Miranda itself indicated that no talismanic incantation was required to satisfy its strictures." The Prysock Court rejected any suggestion of a "desirable rigidity in the form of the required warnings." Id. Specifically, the Court rejected the view that advice concerning the availability of appointed counsel was inadequate because the defendant "was not explicitly informed of his right to have an attorney appointed before further questioning." Id. See also Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) ("Reviewing courts . . . need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably `conve[y] to [a suspect] his rights as required by Miranda.'" (alteration in original) (quoting Prysock, 453 U.S. at 361, 101 S.Ct. 2806)).

2. Advice of the Right to Counsel Without Express Mention of the Presence of Counsel

In Miranda itself, the Supreme Court recognized the adequacy of a particular warning that did not expressly advise a suspect of the right to the presence of counsel during questioning. The Court discussed at length the FBI's practice of advising suspects of their constitutional rights and explicitly recognized the sufficiency of the FBI's practice. Quoting from a letter provided by the solicitor general, the Court set forth the practice followed by the FBI: "`The standard warning long given by Special Agents of the FBI . . . is that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court.'" 384 U.S. at 484, 86 S.Ct. 1602 (emphasis added). The long-given warning had recently been augmented by reference to the "`right to free counsel'" as well as a "`broaden[ing][of] the right to counsel warning to read counsel of [the defendant's] own choice.'" Id. at 484-85, 86 S.Ct. 1602.
The Court observed that "[t]he practice of the FBI can readily be emulated by state and local enforcement agencies." Id. at 486, 86 S.Ct. 1602. And the Court stated unequivocally that "the present pattern of warnings and respect for the rights of the individual followed as a practice by the FBI is consistent with the procedure which we delineate today." Id. at 483-84, 86 S.Ct. 1602 (emphasis added). Strikingly, any express reference to the right to the presence of counsel is absent from the FBI's standard warnings, which the Miranda Court found to be consistent with the requirements imposed by its decision.
This aspect of Miranda was recently discussed by the Fifth Circuit in Bridgers v. Dretke, 431 F.3d 853 (5th Cir.2005). Although the court had previously held that Miranda requires that a defendant be expressly advised of the right to the presence of counsel during questioning, see Atwell v. United States, 398 F.2d 507, 510 (5th Cir.1968), in Bridgers it acknowledged "the Supreme Court's endorsement [in Miranda] of the FBI warnings that did not expressly state there is a right to counsel during interrogation," Bridgers, 431 F.3d at 860. The Bridgers court observed that it is "not clear from the [Miranda] majority opinion . . . whether informing the suspect that he has a right to the presence of an attorney prior to questioning adequately conveys that counsel may remain during questioning." Id. at 859. The court, which was considering a denial of habeas relief from a state court judgment, went on, however, to hold that the state appellate court's decision upholding such a warning did not involve "an objectively unreasonable application of Supreme Court precedent." Id. at 860 n. 6.
In United States v. Lamia, 429 F.2d 373, 374-75 (2d Cir.1970), the court considered *1224 the sufficiency of warnings in which the defendant, after being informed "that `he need not make any statement to [the FBI agents] at [this] time, [was told that] . . . he had a right to an attorney, [and that] if he wasn't able to afford an attorney, an attorney would be appointed by the court.'" After concluding that the warnings were adequate to inform the defendant of his right to remain silent, the court addressed the defendant's argument that the warnings "did not apprise him that he had the right to the `presence' of an attorney during questioning." Id. at 376. Rejecting the defendant's argument, the court stated: "Viewing this statement in context, Lamia having just been informed that he did not have to make any statement to the agents . . ., Lamia was effectively warned that he need not make any statement until he had the advice of an attorney." Id. at 377. In concluding that the warnings were adequate despite the absence of an express statement that counsel could be present during questioning, the court observed that Lamia "was told nothing that would suggest any restriction on the attorney's functioning." Id.
The decision in Lamia has been cited by the Supreme Court. In rejecting the view that Miranda requires a "talismanic incantation," the Supreme Court in Prysock observed: "This Court has never indicated that the `rigidity' of Miranda extends to the precise formulation of the warnings given a criminal defendant." 453 U.S. at 359, 101 S.Ct. 2806. As support for that proposition, the Supreme Court cited Lamia. The Supreme Court's citation of Lamia strongly suggests the Supreme Court's approval of that decision. In United States v. Burns, 684 F.2d 1066, 1074-75 (2d Cir.1982), the court noted the citation to Lamia in Prysock, expressed its continued adherence to Lamia, and upheld warnings whichlike the warnings in Lamia did not expressly state the right to the presence of counsel during questioning.
An approach similar to that followed by the Second Circuit in Lamia and Burns was adopted by the Fourth Circuit in United States v. Frankson, 83 F.3d 79, 81 (4th Cir.1996), where the defendant argued that the warning given to him "was not specific enough to satisfy the requirements set forth in Miranda." The defendant had been advised of his "right to remain silent," his "right to an attorney," and his right to the appointment of a lawyer if he could not afford one. Id. The officer giving the warnings "also told [the defendant] that while he was talking to [the officer], he was free to stop talking to [the officer] at any time." Id. Rejecting the contention that the warnings were insufficient "for not specifically mentioning that the right to an attorney applies both `prior to interrogation' and `during the interrogation,'" the court held that the warnings "communicated to [the defendant] that his right to an attorney began immediately and continued forward in time without qualification." Id. at 82. The court reasoned that the advice to the defendant that he had "the right to an attorney" would necessarily be understood to comprehend the specific right to the presence of counsel before and during questioning: "Given the common sense understanding that an unqualified statement lacks qualifications, all that police officers need do is convey the general rights enumerated in Miranda." Id.
Other courts have also upheld the validity of warnings advising of the right to an attorney without an express statement concerning the right to the presence of counsel during questioning. See United States v. Caldwell, 954 F.2d 496, 504 (8th Cir.1992) (stating that "the general warning that [the defendant] had the right to an attorney, which immediately followed the warning that he had the right to remain *1225 silent, could not have misled [the defendant] into believing that an attorney could not be present during questioning"); United States v. Adams, 484 F.2d 357, 361-62 (7th Cir.1973) (relying in part on Lamia); Eubanks v. State, 240 Ga. 166, 240 S.E.2d 54, 55 (1977) (holding that where defendant was advised of right to remain silent and "that he had a right to any attorney," warnings were sufficient because it was "implicit in this instruction that if the suspect desired an attorney the interrogation would cease until an attorney was present"); Criswell v. State, 84 Nev. 459, 443 P.2d 552, 554 (1968) ("While the [advice that the defendant had a right to counsel] did not specifically advise the [defendant] that he was entitled to have an attorney present at that moment and during all stages of interrogation, no other reasonable inference could be drawn from the warnings as given.") disapproved of on other grounds by Finger v. State, 117 Nev. 548, 27 P.3d 66 (2001); State v. Quinn, 112 Or.App. 608, 831 P.2d 48, 52 (1992) (holding that advice to defendant that he had "the right to an attorney" and to the appointment of an attorney if he could not afford one "did not suggest any limitation on his right to have counsel present during interrogation, or that the appointment of counsel was conditioned on a future event").
Some courts have rejected the reasoning underlying Lamia and other cases that have upheld a warning of a right to counsel without express mention of the right to the presence of counsel during questioning. For example, in two recent cases, the Fifth District has ruled that general advice concerning the right to an attorney is insufficient.
In Maxwell v. State, 917 So.2d 404, 407-08 (Fla. 5th DCA 2006), the court rejected the State's argument that advising the defendant that "he `had a right to an attorney'" implicitly informed the defendant both that "he had the right to have the attorney present during questioning and that one would be appointed in the event he could not afford to hire one." Maxwell involved a circumstancethe failure to mention the right to appointment of counsel which sets it apart from Lamia and similar cases. Nonetheless, Maxwell appears to hold that the failure to expressly inform the defendant of the right to the presence of counsel during questioning in itself rendered the warnings invalid.
In Octave v. State, 925 So.2d 1128 (Fla. 5th DCA 2006), the court identified the sole deficiency in the warnings as the failure to advise of the right to the presence of a lawyer during questioning. The court stated that "the officers only explained to [the defendant] that she had a right to counsel, generally, and never said anything that could fairly be understood as apprising [the defendant] of her right to have a lawyer present during questioning." Id. at 1129. Citing Maxwell, the Octave court concluded that reversal was "clearly required." Id.
Other decisions are in accord with the approach taken by the Fifth District. See United States v. Tillman, 963 F.2d 137, 141 (6th Cir.1992) (holding that warnings containing advice that defendant had "the right to the presence of an attorney" were insufficient because they "failed to convey to defendant that he had the right to an attorney both before, during[,] and after questioning"); Montoya v. United States, 392 F.2d 731, 732 (5th Cir.1968) (holding that warnings containing advice that defendant "had a right to an attorney" were insufficient because they failed to inform defendant of the right to the presence of counsel during interrogation).
In light of the principles articulated in Prysock and of Miranda's approval of the FBI warning, I find the reasoning of Lamia and like cases more persuasive than *1226 the reasoning of the cases that are to the contrary. And I conclude that the reasoning of Lamia and similar cases upholding the sufficiency of warnings advising of the right to an attorney provides support for the conclusion that the advice to M.A.B. concerning the "right to talk to a lawyer" is consistent with the requirements of Miranda. In relying on the reasoning of Lamia and like cases, I reject any suggestion that there is a significant difference between informing a defendant of the "right to a lawyer" and advising him of the "right to talk to a lawyer." The essence of the right to counsel is the right to talk with counsel. All the advantages obtained by a criminal suspect who is represented by a lawyer flow from the core activity of talking with the lawyer. Accordingly, there is no material distinction between advising a suspect of his "right to a lawyer" and advising him of his "right to talk to a lawyer." Indeed, the advisement of a "right to talk with a lawyer" may be the most direct and immediately comprehensible way of explaining the right to counsel.

3. Advice Concerning the Right to Have Counsel Before Questioning

The Supreme Court of California addressed a related fact pattern in People v. Wash, 6 Cal.4th 215, 24 Cal.Rptr.2d 421, 861 P.2d 1107, 1118 (1993), where the defendant challenged the sufficiency of warnings which contained the statement that "you have the right to have an attorney present before any questioning."[5] (Emphasis added.) The defendant argued that this language was insufficient because it "failed to inform him that he was entitled to counsel during questioning." Id. (emphasis added). The court concluded, however, that the reference to access to counsel before questioning could not reasonably be understood as implying that access to counsel would be terminated once questioning began: "[W]e are not persuaded as defendant's argument impliesthat the language [of the warnings] was so ambiguous or confusing as to lead defendant to believe that counsel would be provided before questioning, and then summarily removed once questioning began." Id. at 1118-19. On this point, I find the reasoning of Wash persuasive.
In Roberts v. State, 874 So.2d 1225 (Fla. 4th DCA 2004), the Fourth District addressed the sufficiency of warnings similar to the warnings at issue in Wash and reached a different conclusion than Wash. The Roberts court held that advising a suspect of "the right to talk with a lawyer and have a lawyer present before any questioning," id. at 1226 (emphasis supplied), was inadequate because it "fail[ed] to inform [the suspect] that he had a right to have counsel present during interrogation," id. at 1228 (emphasis supplied). See also State v. Weiss, 935 So.2d 110 (Fla. 4th DCA 2006); West v. State, 876 So.2d 614 (Fla. 4th DCA 2004).
The rule adopted by the Fourth District in Roberts is in accord with decisions from some other courts. See United States v. Noti, 731 F.2d 610, 614 (9th Cir.1984) (holding that warnings which advised defendant of "the right to the services of an attorney before questioning" were inadequate); Windsor v. United States, 389 F.2d 530, 533 (5th Cir.1968) ("Merely telling [a defendant] that he could speak with an attorney . . . before he said anything at all is not the same as informing him that he is entitled to the presence of an attorney during interrogation. . . ."). But other cases have employed reasoning similar to that of the Wash court to uphold warnings referring to the right to consult with an attorney before questioning. See United States v. Vanterpool, 394 F.2d 697, 699 (2d Cir.1968) (upholding validity of warnings *1227 where defendant was advised "he had a right `to consult with a lawyer at this time'"); United States v. Anderson, 394 F.2d 743, 746-47 (2d Cir.1968) (upholding validity of warnings where prior to interrogation defendant was advised "that he had a right to an attorney present at that time"); State v. Arnold, 9 Or.App. 451, 496 P.2d 919, 922, 923 (1972) (holding that where the defendant was advised that "`he had the right to consult with an attorney prior to any questioning'" and the defendant "did not request an attorney on that advice," warnings were sufficient because it was "reasonable to assume . . . that [the defendant] would not have requested the [p]resence of an attorney while he answered the police officer's questions").

4. The Distinctive Aspect of the Warnings Given to M.A.B.

The final sentence of the warnings given to M.A.B. makes this case distinguishable from both the cases which have concluded that a general statement concerning the "right to an attorney" is insufficient and the cases which have held that a statement of the right to consult with counsel before questioning or to have counsel present before questioning is inadequate. The warnings given to M.A.B. make clear that the right to consult with counsel could be exercised not only "before answering . . . any . . . questions" but also "at any time . . . during" interrogation. By specifically referring to the right to consult with counsel both before questioning and at any time during questioning, the advice given to M.A.B. is more detailed than the simple advice of the right to an attorney. And by the reference to the right to consult with counsel at any time, the advice given to M.A.B. avoids the implicationunreasonable as it may bethat advice concerning the right of access to counsel before questioning conveys the message that access to counsel is foreclosed during questioning.
There is nothing confusing or contradictory in the portion of the warnings that advised M.A.B. of the "right to use" any of the rights of which he had been informed "at any time" he wanted during interrogation. This portion of the warnings clearly informed M.A.B. that he could at any time during interrogation avail himself of the right to remain silent, the right to talk to a lawyer, and the right to appointment of counsel. It is not reasonably susceptible to any other interpretation.[6]But see Atwell, 398 F.2d at 510 ("The advice that the *1228 accused was entitled to consult with an attorney . . . `at anytime' does not comply with Miranda's [requirements].").
The warnings given to M.A.B. are similar in significant respects to the admittedly more explicit warnings that were recently upheld by the Fourth District in Canete v. State, 921 So.2d 687 (Fla. 4th DCA 2006). The defendant in Canete was informed: "You have the right to speak to an attorney, have an attorney present here before we make any questions." Id. at 688. The defendant was further informed by the police that if he could not afford an attorney, "one will be appointed before we can . . . ask you any questions." Id. In addition, the warnings at issue in Canete stated: "If you decide to answer the questions now, without an attorney present, you still have the right not to answer my questions at any time until you can speak with an attorney." Id.
The Canete court held "that the language used by the officer in advising Canete is the functional equivalent of that required in Miranda" even though Canete was not expressly told that he had the right to have an attorney present during questioning. Id. The court noted that the defendant was told "that he had the right to the presence of an attorney before [the interrogating officers] could ask him any questions" and that he was asked "if he was willing to answer questions without an attorney present." Id. at 689. The court reasoned that "[t]he totality of the warning given . . . was sufficient for Canete to readily infer that he had a right to have an attorney present `during' interrogation." Id. at 688. See also Bramwell v. State, 929 So.2d 1096 (Fla. 4th DCA 2006) (relying on Canete).
Unlike the warnings given to M.A.B., the warnings in Canete did make explicit reference to the presence of an attorney. But neither the warnings given in Canete nor the warnings given in this case expressly stated that the defendant had a right to the presence of counsel during questioning. Despite the absence of such an express statement, both warnings can only reasonably be understood as conveying the message that counsel could be present during questioning. Only based on a strained, literalistic readinga reading that is inattentive to contextcould the Canete warnings be interpreted as implying that the defendant could have access to a lawyer before questioning and if the defendant stopped questioning but not during questioning. Similarly, only based on a strained, literalistic reading could the warnings given to M.A.B. be interpreted as implying that M.A.B. could talk to a lawyer before questioning and at any time during questioning but could not have a lawyer present during questioning.

5. The Adequacy of the Warnings Given to M.A.B.

The warnings at issue in this case admittedly are not the most elegant formulation of Miranda rights. But the test is reasonable clarity, not elegance. And the language of the warnings meets the test of reasonable clarity. The statement of Miranda rights given to M.A.B. suggests neither that the right of access to counsel is limited to a lawyer who is not physically present nor that the right to counsel is inapplicable during interrogation.
Particularly when viewed in the context of the final sentence of the warnings, nothing in the warnings can be understood to place any limitations on the circumstances of access to counsel. M.A.B. "was told nothing that would suggest any restriction on the attorney's functioning." Lamia, 429 F.2d at 377. "[T]he general warning that [M.A.B.] had the right to [talk with] an attorney, which immediately followed the warning that he had the right to remain silent, could not have misled [M.A.B.] *1229 into believing that an attorney could not be present during questioning." Caldwell, 954 F.2d at 504. An implication that the right to talk with counsel did not include the right to talk with counsel with counsel present can be drawn out of the warning only by ignoring the plain import of the words used. Such an interpretation requires that the "right to talk with a lawyer" be transmogrified into the "right to talk with a lawyerbut only by phone." Such an interpretation ignores "the common sense understanding that an unqualified statement lacks qualifications." Frankson, 83 F.3d at 82.
In summary, because I conclude that the warnings given to M.A.B. cannot reasonably be understood as suggesting that M.A.B. was not entitled to have a lawyer present during interrogation, I reject M.A.B.'s argument that the warnings were insufficient. When considered as a whole, the warnings clearly informed M.A.B. of his continuing right of access to counsel.

B. The Validity of the Miranda Waiver

1. The Waiver Must Be Knowing and Voluntary

A suspect's waiver of Miranda rights is valid only if it is "made voluntarily, knowingly[,] and intelligently." Miranda, 384 U.S. at 444, 86 S.Ct. 1602. There are two essential elements of a valid waiver:
First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.
Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). "The `totality of the circumstances' to be considered in determining whether a waiver of Miranda warnings is valid based on [this] two-pronged approach . . . may include factors that are also considered in determining whether the confession itself is voluntary." Ramirez v. State, 739 So.2d 568, 575 (Fla.1999).
Although it bears a "heavy burden" of demonstrating the validity of a waiver, Miranda, 384 U.S. at 475, 86 S.Ct. 1602, "the State need prove waiver [of Miranda rights] only by a preponderance of the evidence," Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). To meet its burden, the State need not adduce proof with respect to every factor that might have a bearing on the validity of the waiver. See Michael C., 442 U.S. 707, 724-28, 99 S.Ct. 2560 (holding that waiver by juvenile was valid where record contained no evidence regarding education or intelligence of juvenile).
While analysis of the waiver issue begins with a presumption that "a defendant did not waive his rights," North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), "litigation over voluntariness tends to end with the finding of a valid waiver," Missouri v. Seibert, 542 U.S. 600, 609, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was `compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Berkemer v. McCarty, 468 U.S. 420, 433 n. 20, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The "voluntariness of a waiver" of Miranda rights "depend[s] on the absence of police overreaching." Connelly, *1230 479 U.S. at 170, 107 S.Ct. 515. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." Butler, 441 U.S. at 373, 99 S.Ct. 1755.
Circumstances showing that a suspect "was threatened, tricked, or cajoled," Miranda, 384 U.S. at 476, 86 S.Ct. 1602, may be of crucial importance in determining the validity of a waiver. The use of threats to obtain a waiver obviously calls into question the voluntariness of a waiver. And the use of trickery or cajolery may support the conclusion that a waiver either was not made knowingly and intelligently or did not reflect an uncoerced choice.[7]

2. Special Concerns Where the Suspect is a Juvenile

In the context of Miranda rights, "the question of waiver must be determined on `the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" Butler, 441 U.S. at 374-75, 99 S.Ct. 1755 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). That a suspect is a juvenile is, of course, of significance in the analysis of the waiver issue. The inquiry into the totality of circumstances extends to the "evaluation of the juvenile's age, experience, education, background, and intelligence, and [consideration of] whether [the juvenile] has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." Michael C., 442 U.S. at 725, 99 S.Ct. 2560. The "totality-of-the-circumstances analysis" necessarily allows consideration of "those special concerns that are present when young persons, often with limited experience and education and with immature judgment, are involved." Id.
Prior experience with the police and the administration of Miranda warnings are elements in a juvenile's experience that militate in favor of the conclusion that a waiver is made knowingly and intelligently. But a lack of such experience is in itself not sufficient to show that a waiver was invalid because not made knowingly and intelligently. See Ruvalcaba v. Chandler, 416 F.3d 555, 560-61 (7th Cir.2005) (upholding validity of Miranda waiver based on totality of circumstances despite fact that juvenile had no prior experience with law enforcement).

3. The Ramirez Analysis

In Ramirez, 739 So.2d at 576, in holding that a juvenile's oral Miranda waiver was invalid, the Florida Supreme Court focused on five factors:
(1) the manner in which the Miranda rights were administered, including any cajoling or trickery; (2) the suspect's age, experience, background[,] and intelligence; (3) the fact that the suspect's parents were not contacted and the juvenile was not given an opportunity to consult with his parents before questioning; (4) the fact that the questioning took place in the station house; and (5) the fact that the interrogators did not secure a written waiver of the Miranda rights at the outset.
(Citations omitted.)
The court stated that it found "the manner in which the Miranda rights were administered to be a critical factor in determining that the waiver . . . was not knowing, voluntary[,] or intelligent." Id. With respect to this factor, the court observed *1231 that "the Miranda warnings were not given until [the defendant] had made significant admissions of guilt" and that "one of the [interrogating] detectives minimized [the] significance [of the warnings] by suggesting in a casual, offhand manner that he did not expect [the defendant] to invoke his rights." Id. Based on the circumstance that even though the police had "ample probable cause to arrest him for murder" they had told the defendant that he was not under arrest, the court held that it was "simply inappropriate for the police to make a representation intended to lull a young defendant into a false sense of security and calculated to delude him as to his true position at the very moment that the Miranda warnings [were] about to be administered." Id. at 576-77; see also B.M.B. v. State, 927 So.2d 219, 223 (Fla. 2d DCA 2006) (holding waiver invalid where "detective suggested to [juvenile suspect] that [juvenile's] actions were in the nature of a joke or prank and [detective] seemed to suggest that [those actions] were understandable").
In connection with whether the defendant had been afforded the opportunity to consult with his parents, the Ramirez court noted the statutory duty imposed on the police to notify the parents of a juvenile who has been taken into custody. See § 985.207(2), Fla. Stat. (2004).[8] While acknowledging that "failure to comply with [the] statutory requirement does not render a confession involuntary," the court concluded that the circumstance that the Miranda waiver "`was given before [the juvenile] had the opportunity to talk with his parents or an attorney is certainly a factor militating against its'" validity "especially in light of the manner in which the Miranda warnings were administered in this case." Ramirez, 739 So.2d at 577 (quoting Doerr v. State, 383 So.2d 905, 907 (Fla.1980)).

4. The Validity of M.A.B.'s Waiver

In the instant case, there are no circumstances similar to the circumstances identified by Ramirez as "a critical factor" supporting the conclusion that the waiver there was invalid. And although the evidence relevant to the waiver issue is not as fully developed here as it might be, the record before us hardly presents what Judge LaRose's dissent suggests is "but a blank canvas." Here, the signed waiver, the testimony concerning M.A.B.'s maturity and understanding, M.A.B.'s specific oral and written acknowledgment of his understanding of the Miranda rights, and the absence of any coercion, cajolery, or trickery all support the conclusion that M.A.B. gave a knowing, intelligent, and voluntary waiver of his rights.
The burden of proof was on the State, but the defense had a full opportunity to present evidence showing that the waiver by M.A.B. was not voluntary, knowing, and intelligent. The defense, however, presented no evidence showing that M.A.B. lacked the intelligence to comprehend the warnings which he said he understood. Nor did the defense present any evidence concerning M.A.B.'s education or prior experience with law enforcement.[9] And of *1232 course, the defense presented no evidence of coercion, cajolery, or trickery.
Although not dispositive, M.A.B.'s written and oral acknowledgment that he understood his rights is surely a significant factor supporting the conclusion that a waiver was knowing and intelligent.[10] In upholding the validity of a juvenile's Miranda waiver, the Supreme Court in Michael C. placed weight on the circumstance that the police "ascertained that [the juvenile] understood" the Miranda rights. 442 U.S. at 726, 99 S.Ct. 2560. The police had ascertained that the rights were understood by receiving an affirmative response when they asked the juvenile if he understood the rights explained to him. Id. at 710, 99 S.Ct. 2560. The Court further noted that "[t]here is no indication in the record that [the juvenile] failed to understand what the officers told him." Id. at 726, 99 S.Ct. 2560. In support of the validity of the juvenile's waiver, the Court thus relied on the juvenile's acknowledgment that he understood the Miranda rights and on the absence of evidence to the contrary. The Court also relied on the absence of evidence concerning the defendant's intelligence: "There is no indication that he was of insufficient intelligence to understand the rights he was waiving, or what the consequences of that waiver would be." Id. In its analysis of the totality of the circumstances, the Court made no reference to the education of the juvenile. It is apparent from the opinion that no evidence was adduced on that factor.[11]Michael C. therefore makes clear (1) that evidence need not be presented with respect to every relevant factor and (2) that the absence of evidence on a relevant factor may be used to support a conclusion that the waiver was valid.
As in Michael C., M.A.B.'s rights were properly explained, and "[t]here is no indication in the record that [M.A.B.] failed to understand what the officers told him." 442 U.S. at 726, 99 S.Ct. 2560. As in Michael C., "[t]here is [also] no indication that [M.A.B.] was of insufficient intelligence to understand the rights he was waiving, or what the consequences of that waiver would be. He was not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit." Id. at 726-27, 99 S.Ct. 2560.
The substantial factors supporting the validity of M.A.B.'s waiver are not out-weighed *1233 by the circumstances militating toward a conclusion of invalidity. Based on the totality of the circumstances, the State met its burden of showing by a preponderance of the evidence that M.A.B.'s waiver of his rights was valid.

III. Conclusion

The trial court correctly determined that the Miranda warnings given to M.A.B. were adequate and that M.A.B. made a valid waiver of his Miranda rights.
WALLACE, Judge, Dissenting.
Because I conclude that the Miranda warning given to M.A.B. failed to inform him of his right to have an attorney present during questioning, I respectfully dissent from Judge Canady's opinion on the adequacy of the warning in this case. My conclusion that the warning itself was inadequate makes it unnecessary for me to reach the second issue concerning the validity of M.A.B.'s waiver of his rights.
In Miranda, the Supreme Court held that prior to custodial interrogation, law enforcement officers must inform a suspect of certain rights in order to protect the suspect's Fifth Amendment privilege against self-incrimination from the inherently compelling pressures associated with in-custody interrogations. The suspect must be informed (1) that he has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that an attorney will be appointed if he cannot afford one. 384 U.S. at 479, 86 S.Ct. 1602. Protecting the suspect's Fifth Amendment privilege against self-incrimination requires that the right to counsel must include not only the right to consult with counsel prior to questioning but also the right to have counsel present during the interrogation. Id. at 470, 86 S.Ct. 1602. The Supreme Court described the right to have counsel present during interrogation as "indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." Id. at 469, 86 S.Ct. 1602. To explain why the right to have counsel present during interrogation is "indispensable," the Court noted the many important functions that an attorney can perform during questioning. Id. at 469-70, 86 S.Ct. 1602.
If the accused decides to talk to his interrogators, the assistance of counsel can mitigate the dangers of untrustworthiness. With a lawyer present the likelihood that the police will practice coercion is reduced, and if coercion is nevertheless exercised the lawyer can testify to it in court. The presence of a lawyer can also help to guarantee that the accused gives a fully accurate statement to the police and that the statement is rightly reported by the prosecution at trial.
Id. at 470, 86 S.Ct. 1602 (citing Crooker v. California, 357 U.S. 433, 443-48, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) (Douglas, J., dissenting)). The Supreme Court concluded its discussion of this part of the required warning by holding that "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." Id. at 471, 86 S.Ct. 1602. The Court described this part of the required warning as "an absolute prerequisite to interrogation." Id.
The requirement that law enforcement officers convey the warnings dictated in Miranda to a suspect prior to custodial interrogation is inflexible. However, the inflexibility of Miranda's mandate does not extend to the form in which the warnings are given. See Duckworth, 492 U.S. at 202, 109 S.Ct. 2875; Prysock, 453 U.S. at 359, 101 S.Ct. 2806. In Prysock, the Court said that "no talismanic incantation" is required to satisfy the requirements of *1234 Miranda. 453 U.S. at 359, 101 S.Ct. 2806. The Prysock court's rejection of a requirement of a verbatim recital of the language of the words of the Miranda opinion was based on the statement in Miranda that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." 384 U.S. at 476, 86 S.Ct. 1602 (emphasis added). This statement also prompted the Duckworth court to opine that "[r]eviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably `conve[y] to [a suspect] his rights as required by Miranda.'" 492 U.S. at 203, 109 S.Ct. 2875 (alteration in original) (quoting Prysock, 453 U.S. at 361, 101 S.Ct. 2806). Thus, in conducting a de novo review of the adequacy of the Miranda warnings administered to M.A.B. in this case, see Roberts, 874 So.2d at 1227, my task is to determine whether the warnings given reasonably conveyed to M.A.B. his right to have an attorney present during his interrogation.
Before considering the sufficiency of the warnings in M.A.B.'s case, it is helpful to examine decisions in which other courts have been called upon to consider whether a particular warning was the "fully effective equivalent" of the defendant's "right to consult with a lawyer and to have the lawyer with him during interrogation" prescribed by Miranda, 384 U.S. at 471, 476, 86 S.Ct. 1602. Generally speaking, courts have not found a violation of the requirements of Miranda when some formulation concerning the suspect's right to have counsel present during questioning was included in the warnings administered to the suspect. For example, in Prysock, the Supreme Court concluded that the warnings under review in that case conveyed to the defendant his rights as required by Miranda. 453 U.S. at 360-61, 101 S.Ct. 2806. The defendant was given the following warnings: "You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning." Id. at 356, 101 S.Ct. 2806. The Court found that nothing in the warnings suggested a limitation on the right to the presence of counsel. Id. at 360-61, 101 S.Ct. 2806. The Court noted that "`[t]his is not a case in which the defendant was not informed of his right to the presence of an attorney during questioning.'" Id. at 361, 101 S.Ct. 2806 (alteration in original) (quoting United States v. Noa, 443 F.2d 144, 146 (9th Cir.1971)). Similarly, the Duckworth court concluded that the warnings in that case met the Miranda requirements. 492 U.S. at 203, 109 S.Ct. 2875. The police warned the defendant that "[y]ou have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning." Id. at 198, 109 S.Ct. 2875 (emphasis omitted). In clarifying the Miranda holding, the Court in Duckworth held that "Miranda does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." Id. at 204, 109 S.Ct. 2875. Because the defendant was informed that he had the right to an attorney before and during questioning, the warnings at issue in Duckworth were adequate. Id. at 203, 109 S.Ct. 2875.
When a suspect is not explicitly informed of his right to have an attorney present during any questioning, the question of what constitutes a "fully effective equivalent" becomes more problematic. Most federal courts have held that warning an accused in a general manner of his or her right to an attorney is adequate. *1235 See Frankson, 83 F.3d at 82 (finding that the warning "[y]ou have the right to an attorney" communicated the right to an attorney both prior to and during interrogation (alteration in original)); Caldwell, 954 F.2d at 498, 502 (determining that "[y]ou have a right for an attorney" was an adequate warning because it did not actively mislead the defendant by suggesting a false limitation on his right to counsel); United States v. Davis, 459 F.2d 167, 169 (6th Cir.1972) (concluding that the warning of "the right to consult a lawyer, at any time" provides an adequate appraisal of rights); Lamia, 429 F.2d at 376-77 (deciding that warning of "the `right to an attorney'" sufficiently apprised accused that he had the right to the presence of an attorney during questioning). However, when the warning qualifies the accused's right to an attorney, federal courts have generally held the warning to be deficient under Miranda. See Noti, 731 F.2d at 614-15 (finding that "the right to the services of an attorney before questioning" does not advise accused of the right to counsel's presence during interrogation); United States v. Fox, 403 F.2d 97, 99-100 (2d Cir.1968) (determining that warnings did not comply with Miranda standards where accused was only informed that "he could consult an attorney prior to any question"); Windsor, 389 F.2d at 532-33 (finding warning that defendant "could speak to an attorney or anyone else before he said anything at all" was not a full Miranda warning because it did not inform defendant of the right to the presence of an attorney).
In this case, the detective warned M.A.B. that he had "the right to talk to a lawyer before answering . . . any of our questions." This statement properly informed M.A.B. of his right to consult with an attorney prior to interrogation, but it did not inform him of the full extent of his right to counsel. Notification of the right to talk to a lawyer before questioning is not the equivalent of notification of the right to have a lawyer present during questioning. See Windsor, 389 F.2d at 533. These rights differ with respect to timing and, more important, to the types of assistance that counsel can provide at each stage of the process. As the Supreme Court said in Miranda, the right to have counsel present during questioning has significance independent of the right to consult counsel prior to interrogation. 384 U.S. at 470, 86 S.Ct. 1602 ("Even preliminary advice given to the accused by his own attorney can be swiftly overcome by the secret interrogation process."). Moreover, by informing M.A.B. only of his right to talk with an attorney before questioning, the warning suggested a limitation on his right to counsel that was false. Thus the warning under review in this case affirmatively misled M.A.B. about the extent of his right to counsel. For these reasons, the warning did not reasonably convey to M.A.B. that he had a right to have an attorney present during the interrogation.
The State argues that the last sentence of the warning was adequate to inform M.A.B. of his right to have counsel present during interrogation. The last sentence of the warning reads: "You have the right to use any of these rights at any time you want during this interview." Granted, some courts have found warnings that include the language "at any time" to be adequate. See Davis, 459 F.2d at 169 (concluding without discussion that "the right to consult a lawyer, at any time" was an adequate warning); Lawrence v. Artuz, 91 F.Supp.2d 528, 538 (E.D.N.Y.2000) (holding statement that accused "had a right to have an attorney present `at any time' was adequate to convey the notion that he had a right to have counsel present at the time of questioning"). Nevertheless, these decisions are not persuasive on the adequacy of the particular warning at issue in this case. Here, both the warning *1236 about the right to talk to counsel and the warning about the right to the appointment of counsel limit the rights by suggesting that they must be exercised before questioning. Thus the concluding statement in the warning telling M.A.B. that he has the right "to use any of these rights at any time" is confusing and contradictory.
In addition, even if one assumes that the warning's final sentence expands the scope of the warning as a whole to include the pre-interrogation and interrogation stages, the expanded warning still fails to inform M.A.B. of his right to a lawyer's presence during interrogation. Nothing about the statement that "[y]ou have the right to use any of these rights at any time you want during this interview" informed M.A.B. that he had a right not only to consult with an attorney in conjunction with the interrogation process but also had the right to have that attorney present with him during the interrogation. Cf. Atwell, 398 F.2d at 509 n. 8, 510 (finding that warning of "right to consult with an attorney, anyone of his choosing at anytime" does not comply with Miranda directive that defendant be warned of his right to have a lawyer with him during interrogation). For this reason, the warning administered to M.A.B. was not a "fully effective equivalent" of the warning required under Miranda.[12]
In Miranda, the Supreme Court stressed the importance of properly administering the required warning concerning the accused's right to counsel by stating: "No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." 384 U.S. at 471-72, 86 S.Ct. 1602. Because the warning M.A.B. received was inadequate to fully inform him of his constitutional rights, I believe that the trial court erred in denying M.A.B.'s motion to suppress his statements. After a thorough review of the record, I also conclude that the trial court's error in admitting M.A.B.'s statements into evidence was not harmless. I would reverse M.A.B.'s adjudication of delinquency and disposition, and I would remand for further proceedings.
Before closing, I offer the following observations on the question certified by the court. I have reservations about whether the question framed fairly presents the issue of the adequacy of the Miranda warning that was administered to M.A.B. The certified question states the issue as involving "Miranda warnings which advise of both (a) the right to talk to a lawyer `before questioning' and (b) the `right to use' the right to consult a lawyer `at any time' during questioning." But the warning under review in this case does not advise the accused of "the `right to use' the right to consult a lawyer `at any time' during questioning." Instead, the catch-all phrase at the end of the warning says something quite different: "You have the right to use any of these rights at any time you want during this interview." The prior reference in the warning to "the right to talk to a lawyer" is described as a right that must be exercised "before answering any of our . . . questions" (emphasis added). Thus the warning does notas the certified question indicatesinform the accused *1237 of "the `right to use' the right to consult a lawyer `at any time' during questioning" (emphasis added).
That said, I acknowledge the difficulty of framing the issue of the adequacy of the warning under review without restating the warning in its entirety as part of the question. In addition, I agree that the question of the adequacy of the Miranda warning that was administered to M.A.B. is one of great public importance. For these reasons, I concur in the certification of the question.
LaROSE, Judge, Dissenting.
I concur fully in Judge Wallace's dissenting opinion. I write separately to voice my concern that even if the police had informed M.A.B. of his right to counsel during interrogation, the trial court lacked an adequate basis to conclude that M.A.B., a fifteen-year-old, voluntarily, knowingly, and intelligently waived his Miranda rights.
The State bears a heavy burden to demonstrate that a defendant waived his privilege against self-incrimination and the right to counsel. Ramirez v. State, 739 So.2d 568, 575 (Fla.1999). As we have stated, "[t]his burden is even heavier when the suspect is a juvenile." B.M.B., 927 So.2d at 222. In light of this heightened standard, I am unpersuaded by Judge Canady's reliance on cases from other jurisdictions involving confessions by adults. See Linder, 268 N.W.2d 734; Hernandez, 61 Wis.2d 253, 212 N.W.2d 118.
The trial court can find a waiver of Miranda rights only if the totality of the circumstances surrounding the interrogation reveal an uncoerced choice made with an understanding of the consequences of foregoing these constitutional rights. Ramirez, 739 So.2d at 575 (citing Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). In examining the totality of the circumstances, the trial court should scrutinize: (1) the manner in which the Miranda rights were administered, including any cajoling or trickery; (2) the suspect's age, experience, background, and intelligence; (3) whether the suspect's parents were contacted and whether the juvenile had an opportunity to consult with his parents before questioning; (4) the place of interrogation; and (5) whether the police secured a written waiver of Miranda rights prior to interrogation. Id. at 576.
Although the record before us does not reflect any trickery or cajoling by law enforcement officials, I cannot say that this factor, alone, compels the result reached by Judge Canady. After all, the totality of the circumstances analysis dictates that no single factor is dispositive. United States v. Drayton, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (holding that totality of the circumstances means not giving extra weight to any one specific factor); State v. Colitto, 929 So.2d 654, 660 (Fla. 4th DCA 2006) (en banc) (Farmer, J., dissenting) (citing Drayton and other cases for the proposition that no single factor is dispositive to totality of circumstances). Yet, when dealing with a Miranda waiver by a juvenile, the trial court's examination of the totality of the circumstances must, necessarily, focus on the juvenile's "age, experience, education, background, and intelligence." Michael C., 442 U.S. at 725, 99 S.Ct. 2560. In my view, the factual record as to whether M.A.B. voluntarily and knowingly waived his Miranda rights is but a blank canvas untouched by any strokes of factual findings of waiver.
Upon detaining M.A.B. in the late afternoon, police officers handcuffed and transported him to the police station. They placed him in a secure interview room where he remained alone and handcuffed. Approximately thirty to forty minutes later, *1238 an officer, wearing his handgun, entered the room and questioned M.A.B. for about ten minutes. Prior to questioning, M.A.B. signed a form stating that he had been advised of and had waived his Miranda rights. The interrogation was not recorded.[13]
At the time of questioning, the officer knew that M.A.B. was a juvenile but did not know his age. The officer knew nothing about M.A.B.'s background, school grade level, or intelligence. He did not know if M.A.B. had any prior experience with law enforcement. The officer's conclusion that M.A.B. seemed mature and appeared to understand what was happening is untethered to any factual foundation.
Although the police department's standard operating procedure was to contact a parent before questioning a juvenile or to have a parent present at questioning, the officer testified that this procedure was preferred but not required. Nothing in our record indicates that the officer contacted or attempted to contact a parent before obtaining the Miranda waiver or at any other time prior to or during the questioning of M.A.B. Indeed, a second officer who questioned M.A.B. testified that he and the other officer did not discuss contacting M.A.B.'s parents or guardian. In my review of the record, nothing supports the State's suggestion that M.A.B. had an opportunity to call his mother or sister before questioning. And, the record reveals no explanation as to why the officers departed from a standard procedure. I recognize that there is no constitutional requirement that the police notify a juvenile's parents prior to questioning. See J.G. v. State, 883 So.2d 915, 924 (Fla. 1st DCA 2004) (citing Frances v. State, 857 So.2d 1002, 1003 (Fla. 5th DCA 2003)). However, the failure to do so is relevant to assessing the voluntariness of the Miranda waiver. § 985.207(2); J.G., 883 So.2d at 924.
The trial court concluded that M.A.B.'s signed waiver of rights form was adequate and that the interrogation was neither coercive nor oppressive. On that basis, alone, the trial court concluded that M.A.B. made a voluntary, knowing, and intelligent waiver of his Miranda rights. The paucity of evidence before us and the lack of specific factual findings by the trial court forces me to question whether M.A.B. could have waived his Miranda rights "`with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" See J.G., 883 So.2d at 924-25 (quoting Moran, 475 U.S. at 421, 106 S.Ct. 1135). The police officers knew virtually nothing about M.A.B. when they questioned him. And, the factual basis for a valid Miranda waiver remained undeveloped at the suppression hearing.
Judge Canady observes that M.A.B. had prior experience with law enforcement. Based on my review of the record, however, I cannot conclude that such information, even if accurate, was available to or considered by the trial court when it denied the suppression motion. Cf. Michael C., 442 U.S. at 713, 726-27, 99 S.Ct. 2560 (finding record amply supported trial court's conclusion that juvenile was not "a young, naïve minor with no experience with the courts."). Further, the trial court's reliance solely on a signed waiver of rights form falls far short of providing a detailed factual basis supporting a valid *1239 Miranda waiver. The cases cited by Judge Canady recognize the importance of such support. See, e.g., Linder, 268 N.W.2d at 735 (affirming trial court's ruling that State failed to meet burden of proving knowing, intelligent, and voluntary waiver where trial court order suppressing confession contained detailed recitation of events surrounding defendant's interrogation); Chambers, 742 So.2d at 468 (upholding denial of motion to suppress where trial court's ruling was well-reasoned and included specific findings of voluntariness based on review of audiotaped interview); In re G.G.P., 382 So.2d at 130 (reversing denial of motion to suppress confession where recorded interview before trial court demonstrated that defendant was coerced to confess based on promise of immunity from prosecution).
In my view, the totality of the circumstances considered by the trial court established only that M.A.B. seemed to understand the waiver form he signed. Merely reading a Miranda rights form to a juvenile or having him read the rights form does not, by itself, establish that he understood the rights he was giving up and the consequences of his waiver. Id. at 925. My concern is heightened by the fact that with so little information about M.A.B., the police ignored a preferred department policy and chose not to contact a parent or guardian prior to questioning.
I certainly do not suggest that a juvenile can never waive the rights protected by Miranda. Of course, he can. But based on our record, I would insist on a more probing inquiry under Ramirez before concluding that M.A.B. waived his Miranda rights.
NORTHCUTT, Judge, Dissenting.
I agree with the dissenting opinions of Judges LaRose and Casanueva. With one exception, I also agree with Judge Wallace's dissenting opinion. My only difference is with Judge Wallace's view that the advice given to M.A.B. that he could exercise his rights at any time during the interview was confusing and contradictory. I believe that, in context, that statement easily would be understood to mean that the suspect could have a lawyer appointed at any time during the interview and then talk to the lawyer before answering any of the officers' questions.
The problem, as Judge Wallace's opinion ably details, is that the ability to talk to a lawyer before answering a question is not the same as having the lawyer present during questioning. At most custodial interrogations, the attendee who is least likely to discern that the suspect should consult counsel before answering a particular question is the suspect himself. Moreover, even if the suspect appreciates his need to seek legal counsel before answering a question, he might hesitate to do so for fear that it would make him appear guilty or cause the interrogators to focus their investigation on a particular area of inquiry.
As described in the warning given in this case, M.A.B.'s right to counsel consisted of seeking advice about a particular question, thus leaving M.A.B. on his own to assess the potential ramifications of answering a question before seeking legal counsel. As such, it simply was not a "fully effective equivalent" of a warning that would have "clearly informed" M.A.B. that he had a "right to consult with a lawyer and to have the lawyer with him during interrogation." Miranda, 384 U.S. at 471, 86 S.Ct. 1602 (emphasis supplied).
CASANUEVA, Judge, Dissenting.
Although I recognize that the decisional law has not prescribed talismanic warning language, I also conclude that the warning given to M.A.B. did not comply with the dictates of Miranda v. Arizona, 384 U.S. *1240 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. Therefore, I must respectfully dissent. Critical, in my view, is Miranda's mandate that a suspect be told that he or she has the right to the presence of an attorney. This is the overarching right from which the right to talk to or consult with an attorney flows. Advising a suspect that he or she has the right "to talk to a lawyer before answering . . . any of our questions" constitutes a narrower, less functional warning than that required by Miranda.
The Fifth Amendment to the United States Constitution specifies that no person "shall be compelled in any criminal case to be a witness against himself." To insure compliance with the protections of the Self-Incrimination Clause when a suspect has been deprived of freedom during a custodial interrogation, the Court identified four essential warnings in Miranda: A suspect "must be warned prior to any custodial questioning [(1)] that he has the right to remain silent, [(2)] that anything he says can be used against him in a court of law, [(3)] that he has the right to the presence of an attorney, and [(4)] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479, 86 S.Ct. 1602.
Clearly, suspects must be specifically informed that they possess these constitutional rights before law enforcement officers undertake any questioning to solicit incriminating statements that will later be used against them in court. This case focuses on the third rightthe right to presence of an attorneywhich "must be afforded to [suspects] throughout the investigation." Id. (emphasis supplied). Here, M.A.B. was not unequivocally informed that he had the right to the presence of an attorney at any and all times during questioning.
My position is derived not only from Miranda but also from the Court's observations concerning that case in Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Chief Justice Rehnquist, in his analysis of the underpinnings of the Miranda rule and the evolution of the law governing voluntariness and admissibility of a suspect's confession, reiterated the constitutional bases for the voluntariness requirement. Those rights were historically premised on both the Self-Incrimination Clause and the Due Process Clause of the Fourteenth Amendment, but Miranda changed the focus of the Fifth Amendment inquiry. Dickerson, 530 U.S. at 433-34, 120 S.Ct. 2326. No longer was physical brutality or the "third degree" the major evil to be stemmed; by the time the Court wrote Miranda in 1966, law enforcement departments, seizing advantage from the fact that "custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals," id. at 435, 120 S.Ct. 2326 (quoting Miranda, 384 U.S. at 455, 86 S.Ct. 1602), had developed psychologically coercive practices to extract statements from suspects in custody. The Dickerson Court therefore again emphasized that the "coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk" that a suspect's Fifth Amendment privilege against self-incrimination will be obliterated. 530 U.S. at 435, 120 S.Ct. 2326.
Because the rule announced in Miranda is inextricably bound to a suspect's Fifth Amendment privilege, the warnings have taken on constitutional dimensions. In order to guard against the unacceptable risk of violation of a suspect's privilege against self-incrimination, "the Miranda rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for *1241 purposes of the prosecution's case in chief." United States v. Patane, 542 U.S. 630, 639, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion of Thomas, J., joined by Rehnquist, C.J., and Scalia, J.). Thus, voluntariness of the statements is an inappropriate consideration for resolution of a Miranda challenge; and a concomitant disadvantage of the Miranda rule is that "statements which may be by no means involuntary, made by a defendant who is aware of his `rights,' may nonetheless be excluded and a guilty defendant go free as a result." Dickerson, 530 U.S. at 444, 120 S.Ct. 2326.
In order to dispel the compulsion and coercion inherent in custodial surroundings, the Miranda rule requires the disclosure of important safeguards, including "the presence of counsel . . . [to] insure that statements made in the government-established atmosphere are not the product of compulsion." Miranda, 384 U.S. at 466, 86 S.Ct. 1602. The Court's emphasis on the need for counsel's presence could not have been stronger:
The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process. A once-stated warning, delivered by those who will conduct the interrogation, cannot itself suffice to that end among those who most require knowledge of their rights. . . . Even preliminary advice given to the accused by his own attorney can be swiftly overcome by the secret interrogation process. Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires.

Id. at 469-70, 86 S.Ct. 1602 (citations omitted; emphasis added).
In my view, the warning that M.A.B. received was constitutionally flawed because the right to talk to or consult with an attorney is not identical to the right to the presence of an attorney. Miranda requires that suspects be "clearly informed" of their right to have a lawyer with them during questioning. Id. at 471, 86 S.Ct. 1602. "[T]his warning is an absolute prerequisite to interrogation." Id. The safe harbor languagethat M.A.B. was informed of his "right to use any of these rights at any time . . . during this interview"simply cannot cure the deficiency because M.A.B. was never informed that he had the right to have a lawyer with him at all times during his custodial interrogation. Therefore, it was fruitless to tell him that he could exercise the right at any time when he was never informed of the right in the first instance.
The hallmark of Miranda is the need for effective communication to a suspect of the basic constitutional right against self-incrimination. The right to talk to a lawyer before answering questions, which M.A.B. was told was his privilege, is derivative of his and every suspect's greater right to have an attorney present at all times during custodial interrogation. That right was never unequivocably conveyed to M.A.B. Thus, the language used by the police department in this case does not rise to a functional equivalent of the required Miranda warning.
Over a century ago, Oliver Wendell Holmes wrote:
The life of the law has not been logic: it has been experience. The felt necessities *1242 of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.
The Common Law 5 (Mark DeWolfe Howe ed., Little, Brown & Co.1963) (1881). Miranda arose from law enforcement practices existing both before and at the time of the opinion, which the Supreme Court concluded necessitated a protective constitutional rule. Miranda exists so that those experiences are not repeated; and, if repeated, a penalty is extracted. The necessity for this rule has been woven into our constitutional fabric.
Because I conclude that allowing M.A.B.'s statements to be used against him violates his constitutional rights, I would hold that the court should have ordered that his statements be suppressed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In Spence v. Hughes, 500 So.2d 538 (Fla. 1987), the supreme court considered a certified question of great public importance with respect to a decision of an equally divided court.
[3] Before the trial court, M.A.B. also contended that his confession should be suppressed because his detention and arrest were illegal. That argument has, however, not been raised in this appeal.
[4] Although there was no testimony at the motion hearing concerning M.A.B.'s prior experience with law enforcement, it is apparent that he had quite substantial experience with the juvenile justice system. The record shows that upon his arrest on the charges at issue here, the trial court entered a detention order based in part on the court's determination that M.A.B. was "an escapee or absconder from Commitment/Probation Detention" and had violated a court order entered the previous month. The record before the trial court further shows that previously M.A.B. had been repeatedly adjudicated delinquent and repeatedly subjected to the supervision or custody of the Department of Juvenile Justice.
[5] The fact pattern in Wash is similar to the fact pattern in Bridgers.
[6] Judge Wallace's dissent concludes that because the warnings first advised of the "right to talk to a lawyer before answering questions," the subsequent advice of the "right to use any of these rights at any time" was "confusing and contradictory." In the dissent's view, there is a fatal confusion and contradiction arising from the juxtaposition of the before phrase and the at any time phrase in the warnings. With all due respect, this understanding of the warnings is not reasonable.

No basis for finding confusion or contradiction arises from a warning that first advises a suspect that he has a right to counsel before interrogation can proceed and then, two sentences later, advises that the right to counsel can be invoked at any time. There is a natural and logical progression from the before phrase of the warning to the at any time phrasea progression from advising the suspect that he may invoke his right to counsel immediately to further advising him that he also can invoke the right to counsel after interrogation has begun.
To accept the dissenting view on this point requires the belief that a suspect, when hearing the final sentence of the warnings, would conclude that the reference to rights which can be used at any time could not include the right to counsel and that he would reach that conclusion because he had just been advised of his right to counsel before questioning. "You said I have the right to counsel before questioning. You can't now be telling me that I can invoke that same right subsequently." Such a response to the warnings given to M.A.B. would be unreasonable because it would ignore the plain import of the words in their context.
[7] Mere misstatements of fact by the police or the withholding of information by the police will not, however, necessarily render a waiver invalid. See State v. Pitts, 936 So.2d 1111, 1132 (Fla. 2d DCA 2006).
[8] In Ramirez, the court construed section 39.037(2), Florida Statutes (1995), as requiring law enforcement to attempt and to continue such attempt to contact a juvenile's parents upon taking a juvenile into custody. 739 So.2d at 577. The court noted that section 39.037(2) was the precursor to section 985.207(2), Florida Statutes (1997). 739 So.2d at 577 n. 6. The notification requirement in the 1995 version of section 39.037(2) is substantially the same as that in the 1997 and 2004 versions of section 985.207(2).
[9] The defense's failure to present evidence concerning M.A.B.'s prior experience with law enforcement is quite understandable. See footnote 3.
[10] Some courts have specifically held that when the prosecution adduces evidence that a suspect acknowledged his understanding of the Miranda rights, a prima facie showing has been made that the waiver was valid. See State v. Linder, 268 N.W.2d 734, 735 (Minn. 1978) (holding that ordinarily "if the prosecutor shows that the warning was given and that [the] defendant stated he understood his rights and then gave a statement, the state will be deemed to have met its burden of proof, unless there is other evidence" that the waiver was invalid); State v. Hernandez, 61 Wis.2d 253, 212 N.W.2d 118, 121 (1973) ("[W]hen the state has established that [the] defendant has been told or has read all the rights and admonitions required in Miranda, and the defendant indicates he understands them and is willing to make a statement, a prima facie case . . . has been established."); cf. Chambers v. State, 742 So.2d 466, 468 (Fla. 3d DCA 1999) ("It is well established that once the State has made a prima facie showing of the voluntariness of a confession, the burden of proof then shifts to the defendant to show that the confession was not voluntary."); In re G.G.P., 382 So.2d 128, 129 (Fla. 5th DCA 1980) ("If it appears prima facie that the confession was freely and voluntarily made, then the burden is upon the defendant to show that it was in fact not a voluntary confession.").
[11] In Michael C., the Court also relied on the juvenile's prior experience with the justice system. 442 U.S. at 726, 99 S.Ct. 2560. Here, although no evidence was presented at the motion hearing on that issue, the record before the trial court shows that M.A.B. had substantial experience with the juvenile justice system and was an absconder at the time of his arrest for the offenses at issue here.
[12] Other Florida courts have recently addressed the issue of the adequacy of Miranda warnings. See, e.g., Gillis v. State, 930 So.2d 802 (Fla. 3d DCA 2006); Octave, 925 So.2d 1128; Maxwell, 917 So.2d 404; West, 876 So.2d 614; Roberts, 874 So.2d 1225. I have not discussed these cases here because the issue raised by the language of the warning under review in M.A.B.'s case differs from the issues raised by the language of the warnings in these cases.
[13] As some of the cases cited by Judge Canady suggest, audio or video recordings undoubtedly assist the trial court in assessing the voluntariness of a suspect's confession. See Michael C., 442 U.S. at 710-11, 719, 726-27, 99 S.Ct. 2560 (majority); id. at 733, 99 S.Ct. 2560 (Powell, J., dissenting); Chambers, 742 So.2d at 467-68; In re G.G.P., 382 So.2d at 130.